**INSURANCE CO. OF NORTH AMERICA, Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, Appellee.**

No. 77–1894.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 31, 1978.

Decided April 27, 1978.

Glenn C. Equi, John M. Alivernini, Harvey, Pennington, Herting & Renneisen, Philadelphia, Pa., for appellee.

Joseph V. Pinto, James J. Donohue, White & Williams, Philadelphia, Pa., for appellant.

Before ALDISERT, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Restaurateurs are familiar with the good-natured struggles which often ensue when guests attempt to pick up the tab for their dinner companions. It may be fanciful to assume that it was to avoid similar unseemly displays when the time came to pay a casualty loss that insurance companies incorporated "other insurance clauses" in their policies. Certainly, there is one dramatic difference between those generous diners, would-be hosts, and the insurers—the diner pleads for the opportunity to pay the bill; the insurer's use of the "other insurance" clause is designed to confer that honor on the other company. When all insurance policies use the same approach, obviously some accommodation must be reached. In this case, the district court determined that two insurance carriers should share the loss prorata, a kind of "Dutch treat" arrangement. However, in our view, state law requires the appellee to assume the entire loss. Accordingly we reverse, and direct entry of judgment for appellant.

The two insurance companies in this appeal participated in the settlement of a wrongful death action brought against a mutual insured, and later filed this suit in the district court to determine which party should bear the loss. The court determined that the pertinent provisions of the two policies were mutually repugnant and prorated the disputed sum based on the limits of coverage and a deductible payable by the insured.

The facts, though not simple, are not contested. A tractor-trailer, owned by Rebel Truck Rentals, Inc. and leased on a long-term basis to Tifton Aluminum Company, struck and killed Kenneth Toney on a highway in Pennsylvania. The wrongful death action brought by Toney's administratrix was settled for $375,000. The first $100,000 was paid by the primary insurance carrier, reaching the limits of its coverage. That insurer is not a party to this litigation since its payment was conceded to be due. The second $150,000 was paid by the Continental Casualty Company under the terms of the settlement agreement and is not disputed. What is controverted here is the proper source of the remaining $125,000.

Continental Casualty issued an Umbrella Excess Third Party Liability Policy to Rebel Truck Rentals, Inc., with a limit of $2 million. The Insurance Company of North America wrote a Blanket Liability Insurance Policy covering the Tifton Aluminum Company with coverage up to $8.5 million. Under the omnibus clauses, both policies provided coverage to the driver of the truck, the primary tortfeasor. However, each company contended that under the terms of the respective "other insurance" clauses, it was not responsible for the loss in question—the third "layer" of $125,000.

The Insurance Company of North America (INA) policy provides:

"If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the limit of liability hereunder),

the insurance hereunder shall be in excess of, and not contribute with, such other insurance."

The comparable clause in the Continental Casualty policy states:

"If with respect to loss and ultimate net loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects loss and ultimate net loss; provided, that if the limit of liability of this policy is greater than the limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the limit of liability afforded by this policy."

The district court characterized the provisions of both policies as "excess" clauses, repugnant to each other. Using the ratio of the coverages to one another, the court calculated first that INA owed $101,250, and Continental, $23,750. Noting that the INA policy contained a $50,000 deductible provision, the court then reduced that company's share to $51,250 and increased Continental Casualty's liability by an equivalent amount, making its allocation $73,750. INA appealed.

The "other insurance" clauses of insurance policies have proved to be a fruitful source of litigation although the industry has available to it an inter-company arbitration system which can call upon experts in the field to resolve disputes of this nature. Despite this resource, companies frequently choose to submit these complicated coverage questions to courts possessing varying degrees of unfamiliarity with the lore of policy language. Thus, it is not surprising that there are inconsistencies in court decisions interpreting precisely the same verbiage.

We are aided somewhat by the parties' agreement that Pennsylvania law applies, although the Commonwealth's appellate courts have yet to construe clauses containing the specific wording at issue in this case. We turn, therefore, to an analysis of the pertinent policy provisions.

"Other insurance" clauses generally fall into three categories—prorata, escape, and excess; the latter two varieties are material here. An "excess" clause purports to provide protection to the insured in addition to other coverage which might be available to him. Since it does not provide that supplemental protection until the other policy has been exhausted, it is "excess" to the other coverage. An "escape" clause provides that the company invoking it is relieved from any obligation to the insured if other coverage is available. Because the company may "escape" responsibility under its policy if that clause is given effect, not unexpectedly, "escape" clauses are generally in disfavor with the courts.[1] It becomes important therefore, to determine in which category the clauses in the case *sub judice* belong.

The INA clause clearly falls into the "excess" classification, but the same cannot be said for the Continental provision. The first part of the Continental language is of the "escape" variety. The company claims to grant no coverage if the insured has other protection. The second part of the clause following "provided," however, is not so draconian. Excess coverage will be provided, says Continental, but only if the limits of its policy are greater than the "other insurance" available, and not otherwise. As applied to the facts here, the second part of the clause excludes all coverage because Continental's $2 million limit is not greater than INA's $8.5 million. The Continental clause, therefore, in the context of the dispute at bar must be labeled "escape."[2] In

---

1. *See* Risjord, Other Insurance or the Tortuous Channels of Litigation Involving the Conflict Between Fortuitous Adversaries, 29 Ins. Counsel J. 612 (1962); Watson, The "Other Insurance" Dilemma, 516 Ins.L.J. 151 (1966).

2. On some occasions, the term "modified excess" is used. Since INA's limits are larger, the Continental clause is not "excess" and we consider it inaccurate to adopt that terminology here.

so concluding we find ourselves in disagreement with the "excess" characterization adopted by the district court.

Under Pennsylvania law, classification of the clauses has a significant effect upon the ultimate result. In *Grasberger v. Liebert & Obert, Inc.,* 335 Pa. 491, 6 A.2d 925 (1939), the Pennsylvania Supreme Court decided that in a conflict between an excess and an escape clause the court would refuse to enforce the latter. The net result was that the whole loss was borne by the company which sought to avoid any responsibility by invoking its escape clause. This construction is recognized by commentators as the majority view,[3] and would provide a ready basis for resolution of the dispute at hand were it not for differences in the escape clause in *Grasberger* and the one *sub judice.* In *Grasberger,* the pertinent wording was:

> " 'If any other person, firm or corporation insured hereunder . . . is covered *by other valid insurance* against a claim otherwise covered by this Policy, no insurance under the policy shall be applicable to such claim.' " 335 Pa. at 495, 6 A.2d at 926 (emphasis supplied).

The Continental policy, in contrast, uses the phraseology "if . . . the insured has other insurance whether on a primary, excess or contingent basis . . . ." This terminology has sometimes been described as a "super-escape" clause,[4] and in some states has been given a construction distinguishable from the usual escape clause. Some give it effect not because of its difference from the standard clause but, rather, because they choose not to follow the rule enunciated in *Grasberger, e. g., Continental Casualty Co. v. Weekes,* 74 So.2d 367 (Fla.1954). Others differentiate between the two versions, *e. g., Government Employees Insurance Co. v. Globe Indemnity Co.,* 415 S.W.2d 581 (Ky.1967); and still others continue to deny effect to escape clauses, garden variety or super, *e. g., Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.,* 49 Ill.2d 108, 273 N.E.2d 360 (1971).[5] The Pennsylvania courts, however, have not yet ruled whether they would differentiate between the two versions. Interpretation of the clauses, therefore, is not free from doubt, and in the exercise of our diversity jurisdiction, we must predict which road the Pennsylvania courts will travel.

In *United States Fidelity & Guaranty Co. v. Liberty Mutual Insurance Co.,* 327 F.Supp. 462, 465 (M.D.Pa.1971), the District Court for the Middle District of Pennsylvania distinguished a super-escape clause from the usual escape clause and declined to follow *Grasberger* because of the difference in language. The court did not give full effect to the super-escape clause by allowing one company to avoid liability, but finding the clauses repugnant, ordered proration between the companies. By way of contrast, in *Jamestown Mutual Insurance Co. v. Erie Insurance Exchange,* 357 F.Supp. 933 (W.D.Pa.1972) *aff'd,* 474 F.2d 1339 (3d Cir. 1973), the District Court for Western Pennsylvania applied *Grasberger* even though a super-escape clause was present. In that instance, however, the court did not discuss language differences in the excess clauses.

When construing exceptions of doubtful scope in an insurance policy, courts generally avoid any unnecessary narrowing of available coverage. *Walters v. Dunlap,* 368 F.2d 118 (3d Cir. 1966). The question we must answer is whether "other valid insurance" should be given a different meaning than "other insurance, whether on a primary, excess or contingent basis." We think not. The phrase "whether primary, excess or contingent" does not add anything to the all-inclusive "other valid" phrase used in the *Grasberger* case. The super-es-

3. *See* Risjord, *supra;* 16 Couch on Insurance (Second) § 62.76 (1966); Note, Conflicts Between "Other Insurance" Clauses in Automobile Liability Insurance Policies, 20 Hastings L.J. 1292 (1969); Comment, Concurrent Coverage in Automobile Liability Insurance, 65 Colum.L.Rev. 319 (1965).

4. *See* Kurtock, Overlapping Liability Coverage—The "Other Insurance" Provision, 25 Fed'n of Ins. Counsel Q. 45 (1974).

5. For a partial review of state authorities, *see* Kurtock, *supra* at 67.

cape phraseology may be more specific, but its listing of other coverage still falls within the ambit of the very broad phrase "other valid" insurance.

The interpretation of insurance contracts, like other aspects of commercial law, to a great extent must defer to stability. The *Grasberger* decision has served as a guide to insurance companies and their insureds in Pennsylvania for many years. It protects the interests of the insured,[6] and all the companies who write in the state are aware of the policy for which *Grasberger* stands. Distinguishing that case would promote uncertainty in a field of the law where predictability is particularly desirable. We therefore would expect the Pennsylvania appellate courts to apply the *Grasberger* rule to the policies in these circumstances. We conclude that the Continental Casualty escape clause will not be given effect and that the INA policy is purely excess. The full amount of the loss must be assumed by the Continental Casualty Company.

The judgment of the district court will be reversed. Because a pure question of law is involved and no further facts need to be developed in the district court, we will direct the district court to enter judgment in favor of the appellant Insurance Company of North America.

---

6. The large coverages available under both policies here tend to obscure the very real interest of the insured in most situations to secure the benefit of both policies. The issue may become clearer by assuming hypothetically that INA's limit is $75,000 (without a deductible) and Continental's is $50,000. If both policies are in effect, then the full $125,000 obligation here would be satisfied by the two companies. If, however, the Continental escape clause is given effect, only INA's $75,000 would be available and the insured would be liable for the remainder.