648 F.2d 914
 PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY,
and George Wollman, Inc.
v.
LUMBERMENS MUTUAL CASUALTY COMPANY; Greyhound Line, Inc.;
Super Tire Engineering Co.; Hubler Rentals, Inc.; Alliance
Tire & Rubber Co., Ltd.; Lydia Hendricks, Administratrix of
the Estate of Lewis C. Richardson, deceased; Betty Dunbar
Twohig, Administratrix of the Estate of Leo L. Twohig,
deceased; Betty Dunbar Twohig, Administratrix of the Estate
of Leo Dale Twohig, deceased; Lillie Mae Brown,
Administratrix of the Estate of Inez Brown, deceased;
Dorothy Campbell Little
Lumbermens Mutual Casualty Company, Appellant in 80-2365
Pennsylvania Manufacturers' Association Insurance Company,
and George Wollman, Inc., Appellants in 80-2476.
 Nos. 80-2365, 80-2476.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 23, 1981.
Decided May 11, 1981.
 
 Raymond J. Lamb (argued), Lamb, Hutchinson, Chappell, Ryan & Hartung, Jersey City, N.J., for Lumbermens Mutual Casualty Co.
 William B. Scatchard, Jr. (argued), Capehart & Scatchard, P.A., Moorestown, N.J., for Pennsylvania Manufacturers' Association Insurance Company and George Wollman, Inc.
 Before WEIS, and GARTH, Circuit Judges and MILLER,* Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 This appeal presents the question whether two insurance companies each owed a defense to the owner and lessee of a truck that was in a collision causing fatal injuries. Because the truck lease required that the lessee indemnify not only the owner but also its insurance carrier, and since the lessee's policy covered contractual liability, we conclude that the lessee's insurer is solely responsible for defense costs. Accordingly, we vacate the district court's judgment assessing joint liability.
 
 
 2
 The plaintiffs, Pennsylvania Manufacturers' Association Insurance Company (PMA) and George Wollman, Inc., filed suit against the Lumbermens Mutual Casualty Company, alleging that it shared the responsibility for defending their mutual insureds against personal injury and death claims. On stipulated facts, the district court concluded that both insurance companies afforded primary coverage and entered judgment for the plaintiff in the amount of $20,807.99, a share of the total defense costs prorated on the respective policy limits.
 
 
 3
 The accident occurred in New Jersey when a truck tire blew out, causing the vehicle to careen across the highway into the opposite lane where it struck an automobile and a bus. Nine people were killed and ten were injured. A number of claims resulted in litigation, but eventually all were settled through a cooperative and commendable effort by the insurers of the truck and the tire manufacturer. The only matter upon which the carriers could not agree was whether Lumbermens Mutual was obligated to provide a defense to the various parties alleged to be responsible for the operation of the truck, or whether PMA was solely responsible for the expense. The tire manufacturer's insurer has no interest in that question and is not a party to this litigation.
 
 
 4
 Hubler Rentals, Inc., which had its main office in Allentown, Pennsylvania, leased the truck and others to George Wollman, Inc., which had its principal place of business in Westville, New Jersey. The lease between the two companies required that Wollman provide liability insurance to "protect the interest of HUBLER and the LESSEE (Wollman), including their authorized drivers." The agreement also contained the following: "II. The LESSEE (Wollman) hereby covenants and agrees: (n) To indemnify HUBLER or its insurance carrier for all liability by reason of injuries or damages to any person or property resulting from VEHICLES or its operator " Also included was a provision requiring that the lease be construed in accordance with Pennsylvania law.
 
 
 5
 Wollman secured an automobile liability policy from PMA. It is conceded that the policy was applicable to the accident and covered not only Wollman and its driver, but Hubler as well. A special endorsement in the PMA policy stated that the "insurance applies as primary insurance" to the owner of vehicles leased to Wollman. The policy also contained an additional declaration covering the contractual liability of Wollman to Hubler and its insurance carrier under the terms of the lease. In this respect, the policy read,
 
 
 6
 "(PMA) will pay on behalf of the insured (Wollman) all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages because of Coverage Y bodily injury; or Coverage Z property damage to which this insurance applies "
 
 
 7
 The Wollman-Hubler lease was listed in the appropriate schedule.
 
 
 8
 PMA did defend Hubler, as well as Wollman, in the various suits and expended $51,829.20 for legal and investigative services. PMA does not contest that it was a primary insurer and as such owed a defense to both parties. Although Lumbermens insured Hubler under a number of policies, it refused to participate in the defense, claiming its coverages were excess only.[1]
 
 
 9
 The district court discussed three of the Lumbermens policies. The first, No. T3L-26-450, was a garage policy. It did not cover automobiles rented to others by Hubler. Because the truck had been leased to Wollman, the district court gave effect to this exclusion and held that the policy did not apply. No. F3L-26-482 was a combination automobile-general liability policy that did provide coverage for trucks owned by Hubler "while leased to another under a written lease agreement." According to its terms, however, that policy was "excess insurance over any other valid and collectible insurance for Bodily Injury Liability and Property Damage Liability." The district court concluded that this policy was excess over the insurance issued to Wollman by PMA and, consequently did not impose a co-primary duty to defend.[2]
 
 
 10
 The third contract, No. 2MF-13-506, was a comprehensive automobile liability policy, including garage insurance, which, according to the district court, provided primary coverage for Hubler. The policy defined the automobile hazard which it covered to include "the ownership, maintenance or use of any automobile owned by the named insured (Hubler) while furnished for the use of any person." A printed restriction at § e(2)(ii) of the policy excludes coverage arising out of the ownership of any automobile "while rented to others by the named insured." On its face, this language would deny coverage, but a typed endorsement specifically waived this exclusion "as regards any owned vehicle, rented to others, while in the care, custody or control of the Named Insured (Hubler)." The policy did not contain an "other insurance clause."[3]
 
 
 11
 The district court held that the lease requirement that Hubler service and maintain the truck while rented to Wollman came within the definition of "care" under the terms of the insurance contract, and accordingly found that the policy provided primary coverage to Hubler.[4] Lumbermens concedes that coverage would also extend to Wollman, if the policy is applicable.
 
 
 12
 In this diversity case, the district court looked to the conflict of laws rule adopted by the forum state, New Jersey, and determined Pennsylvania law would apply, since both the PMA and Lumbermens policies were issued there. On appeal, Lumbermens contends that New Jersey law should govern because Wollman had its principal place of business in that state; all of the vehicles, which bore New Jersey plates, were garaged, maintained, and used in that state; and the accident occurred there. Lumbermens presses this position because it feels that New Jersey law is more favorably inclined toward enforcement of indemnification agreements.
 
 
 13
 On the other hand, PMA maintains that Pennsylvania law controls because it is a Pennsylvania corporation, with its principal place of business in Philadelphia, and that its policy was issued to Wollman, at an address in that city. PMA contends that under Pennsylvania law, the lease between Hubler and Wollman does not bind PMA because it was not a party to that agreement.
 
 
 14
 Since our disposition of this case would be the same under either Pennsylvania or New Jersey law, we need not resolve the conflicts question. In any event, Lumbermens' primary defense rests upon a construction of the lease, which by its terms calls for application of Pennsylvania law.
 
 
 15
 The district court followed the theory that the lease between Hubler and Wollman did not determine the respective liabilities of PMA and Lumbermens because they were not parties to it and relied on Transport Indemnity Co. v. Home Indemnity Co., 535 F.2d 232 (3d Cir. 1976). That case grew out of a controversy between the respective insurers of the owner and renter of a truck. In the lease, the renter agreed to indemnify the owner of the truck for any liability. Id. at 234. This court refused to enforce the indemnification clause as applied to the insurers, saying "the insurance carriers were not parties to this contract (the truck lease) and their liabilities are governed by their contracts with the insureds, and they cannot be held to anything beyond those contracted duties." Id. at 235 (citations omitted). In the case at hand, the district court believed that statement to be controlling.
 
 
 16
 The holding in Transport Indemnity Co. v. Home Indemnity Co., supra, however, is not determinative of the issue presented in this case. Before rejecting the lease as inapplicable, we must review the insurance contract itself to determine the extent of coverage afforded. In turn, the language of the insurance contract may require recourse to other documents, not to change the agreement between insurer and insured, but to establish facts that call policy terms into play. Thus, if an insurance contract grants or denies coverage because a vehicle is rented, a copy of the lease may be important to resolve the policy dispute. Carolina Casualty Insurance Co. v. Underwriters Insurance Co., 569 F.2d 304, 313-14 (5th Cir. 1978).
 
 
 17
 There are two distinguishing features between Transport Indemnity and the case here. First, the indemnification clause in the Transport Indemnity case designated only the lessor, as opposed to the language employed in this case, which includes Hubler's "insurer" as an additional indemnitee. Second, the PMA policy, under its designated contracts provision, specifically extended coverage to Wollman for its obligations under the lease. Under the terms of that endorsement, PMA assumed Wollman's lease obligation to "indemnify Hubler or its insurance carrier for all liability " Thus, PMA was not a stranger to the lease, but underwrote Wollman's contractually assumed obligations. To that extent, PMA incurred liability in excess of that required by the usual form policy. See 13A J. Appleman, Insurance Law & Practice, § 7527 (1976 & Supp. 1980).
 
 
 18
 Once PMA's obligation under the policy is found to be co-extensive with that of Wollman's relevant contractual obligation, the scope of coverage is determined by the pertinent terms of the lease. The next step, therefore, is to turn to the lease and examine the indemnity clause.
 
 
 19
 Indemnification agreements are generally recognized in Pennsylvania, but the courts are chary about enforcing a contract that requires indemnification against one's own negligence unless that provision is clearly expressed. See Brotherton Construction Co. v. Patterson-Emerson-Comstock, Inc., 406 Pa. 400, 178 A.2d 696 (1962); Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., 404 Pa. 53, 171 A.2d 185 (1961); Gimbel Brothers v. William H. Vanderherchen, 468 F.2d 597 (3d Cir. 1972). General language that indemnifies against "all liability," as found in the indemnifying provision here, is not enough in Pennsylvania to include that arising from negligence of the indemnitee. Id. at 599. The claim in this case, however, does not rest upon indemnification for damages incurred as a result of Hubler's own negligence, but for defense expenses incurred in contesting an award of damages. The Pennsylvania cases that restrict exculpation from negligence, therefore, are not on point.
 
 
 20
 Wollman agreed in the lease to indemnify Hubler and Lumbermens for "all liability" resulting from the truck or its driver. That liability is not limited to satisfaction of damages resulting from negligence, but includes as well the obligation to pay expenses incurred in disproving responsibility for damages. That this broad indemnification was intended by the terms of the lease is established by an examination of its language in the light of the circumstances, including benefits customarily provided by liability insurance policies.
 
 
 21
 The mere fact that it was named as a defendant in the personal injury suits establishes neither Hubler's negligence nor a duty on the part of its insurance carrier to pay damages to the plaintiffs in that litigation. What the litigation did trigger was the necessity for Hubler to secure and pay for counsel to defend the suits. Ordinarily Hubler's insurance company would come forward and provide a defense, since form policies generally assume that obligation, whether the suit had merit or was groundless. The policies issued by Lumbermens to Hubler contain typical defense language.
 
 
 22
 The inclusion of such a clause has the effect of imposing separate and distinct obligations on a liability insurance carrier to pay damages against its insured and to provide a defense. The two duties are not coterminous and a carrier may be obligated to defend its insured in circumstances where the damage award itself may be payable by another insurance company, other party, or the insured himself. C. H. Heist Caribe Corp. v. American Home Assurance Co., 640 F.2d 479 (3d Cir., 1981); Mattocks v. Daylin, Inc., 452 F.Supp. 512, 514 (W.D.Pa.1978), aff'd mem., 614 F.2d 769 (3d Cir. 1979). When the lease agreement speaks of indemnifying Hubler's insurance carrier for "all liability," it must be read as including both of the carrier's obligations damage awards and the cost of defense. Nothing in the lease limits its scope to payment to an injured person and it must therefore include the defense liability as well.
 
 
 23
 PMA, however, resorts to its "other insurance" clause, which provides that if the insureds, Hubler and Wollman, had similar (primary) insurance, liability would be prorated. Such clauses are generally given effect if possible, allowing an otherwise solely primary carrier to be given coinsurer status. See e. g., Insurance Co. of North America v. Continental Casualty Co., 575 F.2d 1070 (3d Cir. 1978). That printed form provision, however, is subject to the special contractual endorsement making PMA a guarantor of Wollman's liability under the lease, as well as the clause stating that as to the owner of a leased vehicle, PMA's insurance was primary. It is arguable that the latter clause is not inconsistent with PMA's claim that both companies have primary coverage. When it is read in conjunction with Wollman's lease obligation to indemnify Hubler's insurance carrier "for all liability," however, it is clear that PMA is obligated to cover Wollman's obligation to indemnify Lumbermens for any defense costs incurred. Thus, adding the obligation of PMA to meet Wollman's duties under the lease results in a neutralization of PMA's "other insurance" clause so as to foreclose that basis for the demand for contribution from Lumbermens.
 
 
 24
 PMA's position essentially is that it shouldered not only its own burden, but Lumbermens as well, and is therefore entitled to contribution. That premise is not valid because by assuming Wollman's obligation to indemnify Lumbermens, PMA took to itself the whole responsibility. We conclude, therefore, that PMA is not entitled to recover the cost of defense from Lumbermens.[5] Accordingly, the judgment of the district court is vacated, and the case is remanded with directions that judgment be entered in favor of the defendant.
 
 
 
 *
 The Honorable Jack Richard Miller, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation
 
 
 [1]
 Coincidentally, Wollman had purchased an excess insurance policy with Lumbermens. The total amount of damages exceeded the limits of the primary PMA policy, so the Lumbermens policy was used in contributing to the settlements. Since that Lumbermens policy was excess, it did not provide a defense in these circumstances, and is not in issue here
 
 
 [2]
 We have carefully reviewed the district court's conclusions with respect to the coverage of these first two Lumbermens policies. We are in agreement with those determinations and find no necessity to discuss them further
 
 
 [3]
 The copy of this policy, designated as Exhibit P-7, contains many other coverages and endorsements not applicable to this case in such a disorganized fashion that we must rely upon the findings of the district court with respect to the applicable endorsements and exclusions. We note in that connection that the other garage policy issued by Lumbermens did have an "other insurance clause." Although a similar clause is not found in policy No. 2MF-13-506, several pages do appear to be missing from the exhibit. In any event, no exception has been taken to the district court's findings by the parties, and we do not pursue the matter further
 
 
 [4]
 In view of our disposition of this case, we do not decide whether this ruling of the district court was correct
 
 
 [5]
 The issues raised by PMA in its cross-appeal need not be addressed, since our disposition of the case moots them