**AUTOMOBILE UNDERWRITERS, INC., Plaintiff,**

**and**

**Donald Nelson and Pauline Nelson, Administrators of the Estate of Eric G. Nelson, Deceased, Intervening Plaintiffs,**

**v.**

**FIREMAN'S FUND INSURANCE COMPANIES**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANIES.**

Civ. A. No. 85–57.

United States District Court, W.D. Pennsylvania.

Nov. 16, 1988.

**1134**

Jan C. Swensen, Pittsburgh, Pa., for plaintiff.

Victor H. Pribanic, McKeesport, Pa., for intervening plaintiffs.

Meyer Darragh Buckler Bebenek & Eck, Pittsburgh, Pa., for defendant Fireman's Fund.

Mary Ann Czajkowski, Baginski & Bashline, Pittsburgh, Pa., for defendant Liberty Mut.

## OPINION

GERALD J. WEBER, District Judge.

On November 13, 1983, William Loving was driving a car rented from Ramsey-

Sturman Ford while his was in the shop for repairs. While driving that car he struck and killed a pedestrian, Eric Nelson.

The decedent's estate filed a wrongful death action against Loving in state court and a dispute quickly arose among the potentially responsible insurers. This dispute resulted in the declaratory judgment action now before us in which we must untangle 3 different insurers and the relative obligations contained in 5 separate policies. The policies in issue are:

1) *Auto Underwriter's Policy:* A personal automobile policy issued to William Loving. Liability limit is $35,000. The policy has an excess clause.

2) *Fireman's Fund Primary Policy:* named insured is Ramsey–Sturman Ford. Policy limits are $1,000,000.

3) *Fireman's Fund Umbrella & Excess Policy:* named insured is Ramsey–Sturman Ford. Policy limits are $5,000,000.

4) *Liberty Mutual Primary Policy:* named insureds include Ford Rent-A-Car and the policy covers lessees of rental vehicles. Liberty Mutual has acknowledged liability on the death claim under this policy and has paid policy limits of $100,000 to decedent's estate.

5) *Liberty Mutual Excess Policy:* named insureds include Ford and Ford Rent-A-Car. Policy limits are $5,000,000.

The three insurers have filed motions for summary judgment with briefs and copies of all policies. All parties are agreed that there are no issues of fact and that interpretation of the competing clauses in the various policies is for the Court. After a review of the record we agree that this matter is ripe for disposition on summary judgment.

## DISCUSSION

There is no dispute that Auto Underwriters's policy is applicable here, the driver William Loving being a named insured. At

issue is the position of this policy in relation to the others on the loss. Auto Underwriters' policy contains the following "Other Insurance" clause:

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide *for a vehicle you do not own* shall be excess over any other collectible insurance. (emphasis added).

We turn to the other policies to determine if there is other collectible insurance.

█ As noted above Liberty Mutual has acknowledged the applicability of its primary policy and has paid its policy limits of $100,000. As to its excess policy Liberty Mutual seeks summary judgment on the basis of the policy's "Definition of Insured":

The definition of insured in any and all underlying policies shall not apply to this policy and, for purposes of this policy, the unqualified word "insured" shall mean:

(1) Ford Motor Company, any Franchised Dealer of Ford Motor Company, and any wholly owned or controlled subsidiary of such Franchised Dealer

(2) Ford Rent–A–Car System

(3) Lincoln–Mercury Dealer Daily Rental System.

Unlike its underlying policy, the excess policy does not include drivers of rental vehicles within the definition of insured. The language of the excess policy is clear, unambiguous and enforceable. William Loving is not an insured under the excess policy and summary judgment in favor of Liberty Mutual is warranted.

█ Interpretation of the Fireman's Fund policies is not so simple. For purposes of coverage, Fireman's Fund's primary policy defines "insured" in the following manner:

D. WHO IS AN INSURED.

1. For Covered Autos.

a. You are an insured for any covered auto.

b. Anyone else is an insured while using with your permission a covered auto except:

.    .    .    .    .

(3) Your garage operations customers. However, if a garage operations customer of yours:

(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance.

By this definition Fireman's Fund purports to limit its liability for customers driving "loaners" to the minimum amount required by state laws. In the present case Fireman's Fund argues that because Loving's Automobile Underwriters policy limits *exceed* Pennsylvania's statutorily required minimum,[1] Loving does not qualify under either (a) or (b) and therefore is not an "insured" under the provision of the primary policy.

On the other hand, Automobile Underwriters characterizes this provision of the Fireman's Fund policy as an "escape clause" which should be stricken, thereby subjecting Fireman's Fund to liability up to policy limits on both the primary and excess policies. See, *Grasberger v. Liebert & Obert*, 335 Pa. 491, 6 A.2d 925 (1939). In plaintiff's view, the Fireman's Fund policy creates a Catch–22. Fireman's Fund limits its liability to a loaner to the minimum coverage required by law. However, be-

**1.** Pennsylvania's Motor Vehicle Financial Responsibility Act, 75 Pa.C.S.A. § 1701 et seq. would apply here because, under the terms of the above-quoted policy provision, Pennsylvania is the state "where the covered auto is principally garaged."

cause Pennsylvania requires each driver to carry insurance at no less than the statutory minimum, if a driver has any insurance at all it will necessarily be at least the minimum. Therefore, Fireman's Fund would never be liable if there is other insurance available.

What plaintiff ignores is that not all drivers carry insurance. Indeed in Pennsylvania the number of uninsured motorists is a serious concern, and sub-section (a) of the Fireman's Fund provision addresses this eventuality. Also, many other states do not have minimum insurance requirements or may not have minimums equal to Pennsylvania's. Not all plaintiff's customers need be from Pennsylvania, and so there is the distinct possibility that a customer may have insurance which does not meet the minimum required by Pennsylvania law. This possibility is covered by sub-section (b) of the above quoted provision.

We view the quoted provision of the Fireman's Fund policy not as an escape clause but as an excess clause, excess over other basic auto liability coverage with a policy limit equal to the amount of the state's statutory minimum. This provision is consistent with and enhances the purpose of the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S.A. § 1701 et seq. to provide at least minimum benefits to all victims of motor vehicle accidents, and it has the salutory benefit of relieving the insured dealership of any obligation to determine each customer's insurance coverage before providing a loaner car.

Pennsylvania relies most heavily on *Insurance Company of North America v. Continental Casualty Co.*, 575 F.2d 1070 (3d Cir.1978). However, the escape clause in issue there is distinctly different from the one before us. The provision at issue here does not contain the typical escape language seen in *INA v. Continental,* and as described above does not always excuse Fireman's Fund from liability, contrary to plaintiff's contention. Furthermore, plaintiff fails to recite any cases addressing the language used in the Fireman's Fund policy or any more closely analogous provisions, and we have found none.

■ We therefore decline to invalidate the above-quoted provision of the Fireman's Fund primary policy. Because Loving has other insurance which exceeds the statutory minimum required by Pennsylvania, Loving is not an insured under the Fireman's Fund primary policy. Also, it is clear that the Fireman's Fund excess policy does not apply if its primary policy does not provide coverage:

### GARAGE ENDORSEMENT

It is agreed that "Garage Customers," as defined below are not insureds hereunder.

"Garage Customer" means any person other than

(1) an employee, director, stockholder, partner or member of the Named Insured or a resident of the same household ...

It is further agreed that this policy does not apply to personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile.

(i) ...

(ii) while rented or leased to others by the Named Insured unless to a salesman for use principally in the business of the Named Insured; however, this exclusion does not apply to the Named Insured with respect to any automobile rented by the Named Insured to a customer of the Named Insured while such customer's automobile is temporarily left with the Named Insured for service, repair or sale, provided the underlying *policy affords customer rental coverage.* (emphasis added).

(See also, Automobile Liability Limitation, No. 5, of the Fireman's Fund excess policy). Therefore summary judgment in favor of Fireman's Fund is warranted on both its primary and excess policies.

■ Finally, we consider the petition of the decedent's estate to permit joinder of Ford Motor Co. as a defendant. Plaintiffs cite *Tapia v. Ham,* 480 So.2d 855 (La.App. 1985), in which Ford was found to have promised in its dealer franchise agreement to provide excess insurance covering all

Rent–A–Car customers, and was found personally liable when it failed to provide such insurance. Although plaintiffs are not privy to the franchise agreement between Ford and Ramsey–Sturman, plaintiffs believe and aver that the agreement contains a similar provision. Under the circumstances recited in *Tapia*, plaintiffs would indeed state a claim against Ford.

The only question is whether this claim should be presented in the present action or in a separate suit. None of the allegations made by plaintiff concerning Ford would affect interpretation of the insurance policies discussed above. The terms of the franchise agreement cannot alter the terms of the policies, and so we do not believe that inclusion of any claims against Ford is necessary to adjudication of the relative obligations of the insurers before us on the policies in issue. Therefore we will deny plaintiffs' petition for leave to join Ford as a defendant in this action, but plaintiffs remain free to institute suit against Ford in a separate action.

### CONCLUSION

For the reasons stated we conclude that:
—Loving is not an insured under the Liberty Mutual excess policy.
—Loving is not an insured under the Fireman's Fund primary policy, and the provision in issue is properly viewed as an excess clause rather than an escape clause.
—Loving is not covered by the Fireman's Fund excess policy which only provides excess coverage to persons and claims covered by its primary policy.
—Joinder of Ford in the present action is not necessary although plaintiffs may assert claims against Ford in a separate action.

Therefore summary judgment will be entered in favor of defendants Fireman's Fund and Liberty Mutual on all claims, and plaintiffs' petition for leave to join Ford as a defendant will be denied.