**AUTOMOBILE UNDERWRITERS, INC., Appellant,**

**Pauline Nelson and Donald Nelson, Intervening Plaintiffs,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES**

v.

**LIBERTY MUTUAL INSURANCE COMPANY.**

No. 88–3850.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) April 18, 1989.

Decided May 16, 1989.

Jan C. Swensen, Swensen & Perer, Pittsburgh, Pa., for appellant, Auto. Underwriters, Inc.

Jane Ann Thompson, Maria Zulick, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, Pa., for appellee, Fireman's Fund Ins. Companies.

Before SEITZ, SLOVITER, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### Issue

This case involves the construction of an "other insurance" clause in an insurance policy providing coverage to a car dealership that leased a car to a customer while his car was being fixed. The customer struck and killed a pedestrian while driving this rented car. The question presented is whether the clause in the car dealership's insurance policy was an "escape" clause, to which Pennsylvania gives no effect, or was a valid "excess" clause, as found by the district court.

### II.

#### Facts and Procedural History

William Loving left his car with Ramsey–Sturman Ford, Inc. (Ramsey) for repairs; he rented from Ramsey a substitute car. The rental car was owned by Ford Rent-a-Car Systems and leased to Ramsey. Loving struck and killed a pedestrian, Eric Nelson, while driving this rental car. Nelson's estate filed a wrongful death action in state court against Loving, claiming $3,325 in funeral expenses, and compensatory and punitive damages in excess of $20,000.

Liberty Mutual Insurance Companies (Liberty), which provided a policy with a $100,000 limit to Ford Rent-a-Car Systems, admitted to being the primary insurer and agreed to pay up to the policy limit of $100,000. Liberty's excess policy, unlike its primary policy, did not cover drivers of rental vehicles.

Automobile Underwriters, Inc., the appellant here, provided Loving's personal automobile policy coverage. The liability limit of its policy was $35,000. The policy contained a provision which stated:

> If there is any other applicable liability insurance we will pay only our share of the loss.. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

App. at 32.

Ramsey was covered by a primary policy issued by Fireman's Fund Insurance Companies (Fireman's Fund) which had a limit of $1,000,000. The Fireman's Fund policy stated:

> Anyone else is an insured while using with your permission a covered auto except:
>
> .    .    .    .    .
>
> (3) Your garage operations customers. However, if a garage operations customer of yours ...
>
> (a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured only up

to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent), less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceeds the limits of his or her other insurance.

App. at 78.

Automobile Underwriters brought a declaratory judgment action against Fireman's Fund based on diversity of citizenship to determine the parties' obligations. It contended that its policy provided only excess coverage to that undertaken by Liberty and Fireman's Fund.

The administrators of the Nelson estate were given leave to intervene as plaintiffs and Liberty was added as a defendant. The three insurance companies moved for summary judgment, and all parties agreed that no material facts were in dispute. The district court granted summary judgment in favor of Liberty with respect to its excess policy because it did not cover drivers of rental vehicles. *Automobile Underwriters, Inc. v. Fireman's Fund Ins. Cos.*, 699 F.Supp. 1133, 1135 (W.D.Pa.1988). No party has appealed from that portion of the order.

The court then held that the clause of the Fireman's Fund policy was an "excess" clause, not an unenforceable "escape" clause, because it insured against the possibility that the driver did not carry insurance or carried insurance below the minimum required by Pennsylvania law. *Id.* at 1136. Therefore, this provision was "excess over other basic auto liability coverage with a policy limit equal to the amount of the state's statutory minimum." *Id.* The court found that the provision was "consistent with and enhances the purpose of" the state's law requiring insurance coverage and had the further "salutary benefit of relieving the insured dealership of any obligation to determine each customer's in-surance coverage before providing a loaner car." *Id.* The court concluded that "[b]ecause Loving has other insurance which exceeds the statutory minimum required by Pennsylvania, Loving is not an insured under the Fireman's Fund primary policy." *Id.*

Finally, the court found that the clear language of the Fireman's Fund excess policy limited excess policy coverage to insureds covered under the primary policy. Therefore, it granted summary judgment in favor of Fireman's Fund on both its primary and excess policies.

Automobile Underwriters appeals. This court exercises plenary review of the grant of a motion for summary judgment. *See Peters Township School Dist. v. Hartford Accident and Indem. Co.*, 833 F.2d 32, 34 (3d Cir.1987).

## III.

### *Discussion*

■ Judicial attitudes towards the use of "escape" clauses vary. *See* 8A J. Appleman, *Insurance Law and Practice* §§ 4906, 4910 (1981 and 1988 Supp.). The leading Pennsylvania Supreme Court case on point is *Grasberger v. Liebert & Obert, Inc.*, 335 Pa. 491, 6 A.2d 925 (1939). In that case, Threshermen Company issued an insurance policy to a company which leased its truck, together with a driver, to a company insured by Aetna. The Threshermen policy covered any person legally responsible for operation of the covered automobile but further provided that "[i]f any other person ... insured hereunder ... is covered by other valid insurance against a claim otherwise covered by this Policy, no insurance under this policy shall be applicable to such claim." 335 Pa. at 494, 6 A.2d at 926. The Aetna policy provided that "if the named Assured is covered under a policy taken out by the owner or operator of any automobile ... the coverage under this endorsement shall be excess coverage over and above the valid and collectible insurance under the policy taken out by the owner or operator." 335 Pa. at 495, 6 A.2d at 926.

A pedestrian was injured by the truck and driver and the lessor and lessee were held jointly liable for the injury. Threshermen paid the judgment and then sought to recover contribution from the lessee. The lessee resisted, arguing that it was covered under Threshermen's own policy. The Pennsylvania Supreme Court agreed. It construed Aetna's policy as excess only, and held that the clause in the Threshermen policy which withheld protection if other coverage existed was not applicable because "up to the amount of the coverage of the [Threshermen] policy, [the insured] is not covered by other insurance." *Id.* 6 A.2d at 926. It distinguished this situation from one where both policies contained clauses providing for proportional contribution when the risk was covered by another policy, in which situation it prorated the recovery from the two policies.

Although the *Grasberger* Court did not denominate the clause in the Aetna policy as an "escape" clause, which is generally defined as a clause providing that there shall be no coverage where there is other valid and collectible insurance, *see* 8A J. Appleman, *supra* at 457, later Pennsylvania courts have so characterized it. *See, e.g., Jett v. Hill*, 10 Pa.D. & C.3d 734, 737 (C.P.Phila.1978) ("Grasberger ... dealt with an escape clause (whereby that policy would be null and void if other insurance existed) vis-a-vis an excess clause."). Recently, the Pennsylvania Superior Court, following a discussion of *Grasberger, inter alia*, concluded that "it appears that the weight of authority instructs us to strike the escape clause or provision and enforce the policies as if the escape provision did not exist." *Connecticut Indem. Co. v. Cordasco*, 369 Pa.Super. 439, 444, 535 A.2d 631, 634 (1987). This court, citing *Grasberger*, has explained that the courts of Pennsylvania have treated escape clauses with disfavor because they find "it unacceptable for an insurance company to provide no coverage under a policy for which it received premiums." *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 166 (3d Cir. 1987).

The clause in the Fireman's Fund policy at issue here goes beyond the escape provi-sion in *Grasberger*. Known as a "super-escape/reduced limits clause," *see* 8A J. Appleman, *supra* at 350, 457, it provides that the company will not provide coverage when there is any other insurance available except to cover the excess of damages not covered by any other insurance up to the limit of an applicable financial responsibility law.

This court considered the effect of *Grasberger* on a "super-escape" clause in *Insurance Co. of North America v. Continental Casualty Co.*, 575 F.2d 1070 (3d Cir.1978) ("*INA*"). INA insured the lessee of a tractor-trailer under a policy agreeing to provide coverage "in excess of, and not [in] contribut[ion] with, [any other applicable] insurance." *Id.* at 1072. We characterized this provision as an excess clause, because it did not provide supplemental protection until the other coverage available to the insured was exhausted. The other insurer, Continental, insured the owner/lessor of the tractor-trailer under a policy which stated that "[i]f ... the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder ... provided, that if the limit of liability of this policy is greater than the limit of liability provided by other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the limit of liability afforded by this policy." *Id.*

Judge Weis, writing for this court, stated that although "the first part of the Continental language is of the 'escape' variety," the second part is not so "draconian" in that it undertook to provide coverage if the limits of its policy were greater than the other insurance available. *Id.* at 1072. However, because the policy limit in the Continental policy was lower than INA's, we held that "in the context of the dispute at bar" the provision must be considered an escape clause, and noted that " 'escape' clauses are generally in disfavor with the courts." *Id.* at 1072.

We predicted that Pennsylvania would not make a distinction between a "super-es-

cape" clause and the basic escape clause at issue in *Grasberger.* We construed *Grasberger* to hold that, "in a conflict between an excess and an escape clause the court would refuse to enforce the latter," and would require that the whole loss be borne "by the company which sought to avoid any responsibility by invoking its escape clause." *Id.* at 1073. *Accord Jamestown Mut. Ins. Co. v. Erie Ins. Exch.*, 357 F.Supp. 933 (W.D.Pa.1972) (where one policy contained excess clause and the other contained escape clause, policy with escape clause held to provide coverage), *aff'd mem.*, 474 F.2d 1339 (3d Cir.1973).

Thereafter, the Pennsylvania Superior Court in *Connecticut Indemnity Co. v. Cordasco*, 369 Pa.Super. 439, 535 A.2d 631 (1987), expressly adopted our analysis of Pennsylvania law as set forth in the *INA* case. Connecticut Indemnity provided insurance to the car dealership which owned the car involved in the accident. The driver had an insurance policy issued by State Farm Insurance which provided primary automobile insurance coverage on his personal automobile. The State Farm policy also provided coverage for use of temporary substitute cars but provided that:

> If a temporary substitute car ... has other vehicle liability coverage on it, then this coverage is excess. This coverage shall not apply:
>
> a. If the vehicle is owned by any person or organization in a car business, and
>
> b. *if the* insured or *the owner has other liability coverage which applies in whole or in part as primary, excess or contingent coverage.*

369 Pa.Super. at 443, 535 A.2d at 633 (emphasis added). The Pennsylvania Superior Court expressly followed *INA* and found this language to constitute an escape clause because it purported to relieve the insurer from any obligation to the insured if other coverage is available. 369 Pa.Super. at 444, 535 A.2d at 633. The court found "no difficulty with the fact that the escape provision is tied to an excess coverage provision," noting that this court had, in the *INA* case, dealt with a similar clause. 369 Pa.Super. at 444, 535 A.2d at 633–34.

The *Cordasco* court disregarded the escape provision and held that State Farm was obligated to provide the excess coverage at issue.

Nothing in *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163 (3d Cir. 1987), to which Fireman's Fund alludes, is contrary. In *Contrans,* Old Republic issued a policy covering both the tractor portion of a rig involved in an accident, which was owned by its insured and leased to Contrans, and the trailer portion, owned by another party and leased to Contrans. The policy provided that the insurance "*shall not* apply if there is other coverage applicable to the trailer and available to the lessee/renter." *Id.* at 167 (emphasis in original). Although the district court had construed this language as an escape clause, we held instead that the limiting clause was applicable only to the trailer (which Old Republic's insured did not own) and that in fact Old Republic's policy provided primary coverage on the tractor. Because the policy did not evince an intent to escape coverage entirely, it was not to be construed as an escape clause. *Id.* at 170.

Fireman's Fund argues that its policy, like that recently construed in *Widener University v. Fred S. James & Co.*, 371 Pa.Super. 79, 537 A.2d 829 (1988), should be viewed as an excess clause rather than an escape clause. The clause at issue there read, "The insurer shall not be liable to make any payment for loss in connection with any claim against the Assureds ... which is insured by another policy or policies except in respect of any excess over and above the amount or amounts of such other policy or policies," 371 Pa.Super. at 83–84, 537 A.2d at 831, and was a fairly straightforward excess clause. *See also Maryland Casualty Co. v. Horace Mann Ins. Co.*, 551 F.Supp. 907, 910 (W.D.Pa. 1982), *aff'd mem.*, 720 F.2d 664 (3d Cir. 1983) (holding a clause stating that it did not apply "to that *portion* of any claim ... against the insured which is insured by another valid policy" should be construed as an excess clause, rather than an escape clause, because "[n]owhere does defendant attempt to escape liability in its entirety" (emphasis added by district court)). Fire-

man's Fund confuses the distinction between an excess clause and an escape clause. An excess clause provides for payment of that portion of the claim that remains unpaid once other coverage is exhausted. *Id.; see also INA* 575 F.2d at 1072. An escape clause, on the other hand, relieves the insurer from any obligation to its insured if other coverage is available. *Id.*

The district court here reasoned that the Fireman's Fund clause was not an escape clause because it would not exonerate the company from liability with respect to a class of potential insureds, *i.e.*, those without the minimum coverage required under law. Such a construction is inconsistent with our analysis in *INA*. There, we refused to view the clause in a hypothetical situation and instead construed the clause "[a]s applied to the facts here" and labeled it "escape" "in the context of the dispute at bar." 575 F.2d at 1072. No escape clause exonerates the company from liability in *all* situations; all such clauses by definition contemplate the possibility that no other insurance policy will provide coverage, but it is only in the event of that contingency that the insurer will be responsible.

The policy reason for nullifying escape clauses was discussed in *INA* where we noted that such a rule protects the interests of the insured; that companies who write insurance in the state are aware of the rule; and that applying it would promote certainty in a field of law where predictability was particularly desirable. 575 F.2d at 1074.

It follows, with the escape clause stricken, that the Fireman's Fund primary policy coverage of $1,000,000 is applicable to the claim at issue. Moreover, we note that the basis on which the district court held that the Fireman's Fund excess policy was inapplicable, *i.e.*, its applicability only to insureds covered under the primary policy, can no longer be used to exclude its coverage.

## IV.

### Conclusion

For the reasons set forth above, we will reverse the judgment of the district court and remand for the entry of a declaratory judgment consistent with this opinion.