537 F.Supp. 65 (1982)
TRANSIT CASUALTY INSURANCE CO.
v.
NATIONWIDE MUTUAL INSURANCE CO.
and
Garden of Prayer Church.
No. 81-0837.
United States District Court, E. D. Pennsylvania.
January 15, 1982.
*66 Brian M. Addison, German, Gallagher & Murtagh, Philadelphia, Pa., for plaintiff.
Joseph Weiner, Freedman & Lorry, Philadelphia, Pa., for Garden of Prayer.
Joseph T. Bodell, James C. Haggerty, Swartz, Campbell & Detweiler, Philadelphia, Pa., for Nationwide.

MEMORANDUM OPINION AND ORDER
WEINER, District Judge.
This action arises out of an accident which occurred on the Schuylkill Expressway in Philadelphia, Pennsylvania on May 18, 1980 involving a bus owned by defendant Garden of Prayer Church (Church) and insured by defendant Nationwide Mutual Insurance Co. (Nationwide) under a liability policy issued to the church. At the time of the accident, the bus, driven by Robert Stewart, was enroute from Philadelphia, Pennsylvania to Atlantic City, New Jersey and was being used by Overland Coach Lines Company (Overland), which was insured by plaintiff Transit Casualty Insurance Co. (Transit). At issue is the applicability of coverage under those policies.
Transit seeks a declaratory judgment that Nationwide's policy of insurance issued to the church is applicable and provides coverage for any and all claims arising out of the accident, and that Nationwide has a duty to defend against any and all such claims.
Nationwide denies the applicability of coverage under its policy for any of the claims generated by the bus accident, or that it owes a defense to the church. Further, it asserts that coverage for the bus at the time of the accident was provided by the Transit policy issued to Overland.
Jurisdiction is based upon diversity of citizenship and an amount in controversy in excess of $10,000.00, pursuant to 28 U.S.C. § 1332. Trial was held before this court, sitting without a jury. For the reasons to follow, we find that Nationwide owes no insurance policy coverage to the church, the driver, or Overland, and that Transit, under its policy, owes coverage to Overland and the driver, but not the church.

I
Following the accident, Nationwide informed the church by letter dated October 10, 1980, and by an accompanying proposed non-waiver agreement which the church was requested to execute, and pursuant to which Nationwide proposed to defend the church, that Nationwide was raising issues of coverage and entitlement to benefits under the policy. Nationwide stated in the proposed agreement that the reason the church might not be entitled to coverage or benefits was as follows:
The insured's application of insurance cites bus use for church/school purposes when in fact it may have been used for other purposes and hired out for monetary reimbursement and/or donations, for non-church functions. The Company, had it known this, may not have accepted the risk for coverage, or if it did, the premium charges would have been substantially greater since the actual risk is greater.
The church did not execute the proposed agreement, and by letter of November 20, 1980, was informed by Nationwide that coverage was therefore disclaimed and that Nationwide would "not handle any claims or defend any suits brought against the church or driver Robert Stewart as a result of this accident." The letter stated that "[t]he reason for disclaimer of coverage is that your application for insurance misrepresented the actual use of the vehicle as outlined in the non-waiver agreement sent to you on October 10, 1980."
*67 Testimony offered at the trial bears directly upon the question of alleged misrepresentation on the part of the church in applying for and obtaining insurance from nationwide. Reverend Herman Thompson, a lay minister of the church, who secured the policy on its behalf from Leroy Funk, Nationwide's agent, testified that the bus was "99%" of the time used for church business. He recalled that on "two or three" occasions the bus was used for other than church business, and on "two or three" occasions it was used for other than church "civic" occasions. "Three or four" times Mr. Mitchell, the owner of Overland, had used the bus. Reverend Thompson further testified that he had "loaned" the bus to Mr. Mitchell and Overland, for the trip on which the accident occurred, but that he didn't know anything about a travel agent booking in connection with the trip and use of the bus. In addition, Reverend Thompson stated that in exchange for the use of the bus the church would receive a "donation" based on the trip. Finally, the Reverend testified that he could not remember anyone from Nationwide ever telling him the ramifications of use of the bus for non-church purposes.
Also testifying at trial was Leroy Funk, insurance agent for Nationwide. Mr. Funk stated that the application was filled in by him with information supplied by Reverend Thompson, who told him that no special trips or trips over fifty miles were planned. Mr. Funk testified as well that he told Reverend Thompson that Nationwide did not issue policies on buses for hire.
A copy of the "Commercial Vehicle Application" for insurance, prepared by Mr. Funk and signed by Reverend Thompson, has been supplied to and examined by the court. In the section at the beginning of the application used to indicate the type of vehicle to be insured, an "X" has been placed in the box next to the words "School Bus", but no mark appears in the box next to the words "School Bus Special Trip." Section 15 of the application is entitled "School Bus", and under subsection (B), "Use of Vehicle", an "X" has been placed in the box next to the word "Other-Describe Fully". On the space there provided the words "Church and Sunday School on Weekends" have been written. In Section 12, next to the words "Truck is operated regularly within a radius of," the box with 0 to 50 is circled, and 0 is written next to both "No. of trips per year beyond this radius" and "Est. mileage per year beyond this radius."
We have also examined the schedule of premiums issued by Nationwide for the policy providing coverage for the bus. This document advised that "[t]he estimated total premium for this policy is based on the exposures you told us you would have when the policy began."
The Nationwide insurance policy itself, No. 58BA-120-228-0001, under Part IV, "Liability Insurance", Section (D), "Who Is Insured", provides as follows:
"(1) You are an insured for any covered auto" and
"(2) Anyone else is an insured while using with your permission a covered auto you own...."
The policy further provides, under the heading "Other Insurance", that "[f]or any covered auto you own this policy provides primary insurance." The bus is listed on the policy under the heading "Covered Autos You Own."
The liability insurance policy issued by Transit to Overland, No. GLA 78 47 26, has been submitted to the court as well. Schedule # 2, with information typed in the appropriate spaces, indicates that coverage is provided for "Owned Automobiles", "Hired Automobiles", and "Non-Owned Automobiles." Included as insured under the policy, in Schedule # 2, Section II,
"Persons Insured", are "(a) the named insured; ... (c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission ...; and (d) any other person or organization but only with respect to his or its liability because of acts or omissions of an *68 insured under (a) ... or (c) above." Section II, "Persons Insured", also states as follows: "None of the following is an insured: ... (ii) the owner or lessee (of whom the named insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee...."
Pursuant to Schedule # 2, Section V "Additional Definitions", "`hired automobile' means an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured." Also under that section, "`non-owned automobile' means an automobile which is neither an owned automobile or a hired automobile."
The policy also provides, under Schedule # 2, Section VI "Additional Conditions", subsection A "Excess Insurance  Hired and Non-Owned Automobiles", as follows: "With respect to a hired automobile, or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

II
When the defense to an insurance policy is based on false and fraudulent misrepresentations, "[t]here are three elements that an insurer must establish to void a policy in the case of misrepresentations. These are: (1) the declaration must be false; (2) its subject matter must be material to the risk; and (3) the applicant must have known it to be false or must have made the statement in bad faith." Lotman v. Security Mutual Life Ins. Co. of New York, 478 F.2d 868, 870 (3d Cir. 1973); quoting Bremmer v. Protected Home Mutual Life Ins. Co., 218 Pa.Super 364, 280 A.2d 664, 665 (1971) (allocatur refused).
As to the first prong of the test, the mere fact that the bus was at the time of the accident being used for non-church purposes on a round trip of approximately 200 miles is strong evidence to establish the falsity of the declarations regarding use of the bus. This is especially so in the face of Reverend Thompson's testimony that there were "two or three" occasions on which the bus was used for non-church business, and "three or four" occasions on which the bus had been used by Overland.
As to the third prong, the testimony of Reverend Thompson, together with the presence of his signature on the application, completed with information supplied by him concerning use of the bus, establishes that he, Reverend Thompson, knew of the falsity of the statements given to Nationwide. As recognized by the court in Lotman v. Security Mutual Life Ins. Co., supra, relying on Bremmer v. Protected Home Mutual Life Ins. Co., supra, there is no requirement that the insurer prove that the applicant's inaccurate representations were made for the purpose of deceiving the insurance company. It is enough for the applicant to know his or her representations to be false. We find that to be the situation here, and the third prong of the test to be thereby satisfied. We now turn to the second prong of the test, which is somewhat more involved.
We conclude also that it is of little significance whether Reverend Thompson knew of a charter trip or other particular use of the bus by Overland, for regardless of the use to which Overland would put the bus, Reverend Thompson surely knew that the use would not be church related.
In its trial brief, Transit essentially argues that the Nationwide policy's coverage cannot be avoided because responsibility for the purported misrepresentation upon which such avoidance is predicated cannot be attributed to Reverend Thompson, but rather rests with Nationwide's own agent, Leroy M. Funk. Transit supports its argument by relying heavily on the fact that it was Mr. Funk who actually filled in the application, including the information concerning the use of the bus, based upon answers to questions posed by him to Reverend Thompson. According to Transit, avoidance of the policy and the coverage provided thereunder cannot be based upon what in its view is the Nationwide agent's own failure to ask specific enough questions of Reverend Thompson. In addition, Transit *69 contends that Reverend Thompson's consequent "different understanding" of the permitted use of the bus does not constitute fraudulent misrepresentation.
From the evidence presented there is nothing from which we could conclude that Nationwide, through its agent, Mr. Funk, failed to elicit sufficient information from Reverend Thompson about the intended use of the bus. We simply cannot find Nationwide responsible for the "misunderstanding" between it and Reverend Thompson concerning the bus' coverage under the policy. There is no dispute that although physically completed by Mr. Funk, the application was based on questions asked of and answered and information supplied by Reverend Thompson, and that fact alone is sufficient to reject a finding that Nationwide was to blame in issuing a policy based on information obtained in such a manner. This is especially so in the absence of any allegation of misrepresentation or bad faith on the part of Nationwide with regard to the application for and issuance of the policy. Moreover, there is no reason to think that Mr. Funk omitted from the application any additional, pertinent information supplied by Reverend Thompson about the use of the bus.
In addition, it is immaterial that Reverend Thompson's signature does not appear on that page of the application which contains question 16 (regarding use of the bus) but does appear on another page of the application, directly below question 12 (regarding the regular operating radius of the bus). Indeed, the signature is in the appropriate space specifically provided for such purpose. Absence of any additional signatures elsewhere on the face of the application is of no consequence, and does not at all suggest that Reverend Thompson was unfamiliar with or unaware of the answer to question 16 as recorded by Mr. Funk, and therefore did not know that it was false.
Transit is also incorrect in attempting to minimize the fact that the bus was used on several occasions for non-church purposes by focusing on the "primary" use of the bus for church purposes. Not only does such an argument ignore the significance to Nationwide of knowing of such additional use of the bus when determining whether, with what coverage, and at what premium to issue a policy of insurance, but it fails to consider as well the not inconsequential fact that the bus was on a non-church trip which would take it considerably beyond the 50 mile radius of operation reported in the application. Certainly, information that the bus would be used for non-church purposes, and that trips of such distance were contemplated would have been of keen interest to Nationwide when writing its policy, or else questions on those very subjects would not have been included in the application.
In addition, in the proposed non-waiver agreement sent by Nationwide to the church, Nationwide stated that had it known of other, non-church, uses of the bus, it "may not have accepted the risk for coverage, or if it did, the premium charges would have been substantially greater since the actual risk is greater." We note as well that it was the testimony of Mr. Funk, the Nationwide agent, that he had told Reverend Thompson that Nationwide did not insure buses for hire.
Moreover, contrary to Transit's assertion in its brief, the risk to the insurer is changed to a material degree when the insured vehicle is used for occasions other than as stated in the application. This conclusion is not difficult to reach when we consider the statement in the schedule of premiums advising that the premium is based on the exposure reported by the insured at the time of the application. Indeed, that statement merely reflects the generally accepted, judicially noticeable principle of the insurance industry that premiums are based upon the risk to which the insurer, through its insured, is exposed. Certainly it is significant for the insurer to know if trips beyond the regular operating radius of 0 to 50 miles are planned, or that the bus might be used for purposes other than "Church and Sunday School on Weekends." Thus, the second prong of the test for avoidance of the policy is met, as the *70 subject matter of the false statement was material to the risk.
Since Nationwide is able to avoid the policy with respect to the use of the bus during which the accident occurred, no coverage is provided by it to the church, or to the driver of the bus, Robert Stewart, or to the use of the bus, Overland, for any loss arising out of the accident.

III
Having concluded that Nationwide did not act improperly in denying policy coverage to the church, we turn to an examination of the Transit policy and consider whether that policy provides coverage to the church, the driver, and Overland. We find that under its terms, the policy covers Overland and Stewart, the driver, but does not cover the church.
One issue may be disposed of immediately. The Nationwide policy states that it provides "primary insurance", while the Transit policy states that it is only "excess insurance over any other valid and collectible insurance available to the insured." Nevertheless, because the Nationwide insurance policy may legally be avoided, there is no "other valid and collectible insurance available to the insured", Overland, so that the Transit policy is not merely excess, but is primary insurance for Overland.
There can be no doubt that coverage under the Transit policy is provided to Overland, as a "named insured", and that the bus is a "hired automobile." According to the terms of the policy, a "hired automobile" is one "contracted in behalf of, or loaned to the named insured." Thus, we need not decide whether the bus was for hire rather than loaned to Overland. Consequently, we need not deal with the alleged applicability of ICC law and regulations with regard to vehicles for hire, nor need we examine those sections of the Transit policy which may have effect in the event such law did apply.
Moreover, no matter what the characterization, it is clear that the bus was at the time of the accident being used by Overland, for its business, and was not being used by the church for church business, because the church, through Reverend Thompson, had agreed to permit Overland to use the bus. The same conclusion was reached in the analagous case of Walter v. Dunlap, 368 F.2d 118 (3d Cir. 1966), where the court in interpreting two insurance policies, found that at the time of an accident involving a leased tractor-trailer, the vehicle was being used exclusively in the business of the lessee, not the lessor. We believe the same reasoning to be sound in the case sub judice regardless of whether the bus was leased or loaned to Overland. Furthermore, the church, as "owner ... of a hired automobile or ... of a non-owned automobile ..." is not an insured under the Transit policy.
Transit is correct in its interpretation of its policy, issued to Overland, as not providing coverage to the church. Nevertheless, Transit is not correct in its conclusion that Robert Stewart, the driver of the bus, is likewise not covered under the Transit policy. From our reading of the policy we determine that it clearly provides coverage to Overland with respect to Overland's use of the bus, for Overland is a named insured, and that it consequently provides coverage to Stewart, the driver, as he was driving the bus as Overland's agent.
Transit apparently attempts to exclude Stewart from coverage on the theory that he was operating as an agent of the church which is not covered under the policy, yet that argument misses the point, for so long as Stewart was an agent of Overland, coverage under the Transit policy is applicable as to him. There is no doubt that Stewart was an agent of Overland, despite Transit's attempt to disavow any such relationship, for regardless of whether it was Reverend Thompson or someone from Overland who arranged for the services of Stewart, Overland surely consented to the use of his services by allowing him to use the bus with its permission. and for its business. There is no reason to believe that Stewart's operation of the bus was not within the scope of the permission granted him by Overland, and no such allegation to the contrary has *71 ever been made. Thus, Overland's acceptance of Stewart as driver of the bus, in furtherance of Overland's business, leads us to recognize him as Overland's agent, and thus covered under the terms of Transit's policy.
It is important to note that our finding that Nationwide owes no coverage to the church due to the church's failure to supply Nationwide with highly relevant information concerning the use of the bus, but that Transit's policy provides coverage to Overland and Stewart, although not to the church, with respect to Overland's use of the bus on the occasion in question, in no way gives Transit cause to complain that it is being unfairly treated. Transit is not the least bit prejudiced by the decision we reach, for the result of that decision is merely that a vehicle liability policy issued to an insured provides coverage to that insured for an accident arising out of the insured's use of a vehicle not otherwise covered by another liability policy.

IV
We have concluded that as a result of the church's misrepresentation, Nationwide may legally avoid with respect to any loss arising out of the accident involving the bus, the policy issued by it to the church. Consequently, it owes the church no insurance coverage or legal defense, nor does it provide coverage under that policy to the driver, Stewart, or the user of the bus, Overland. We have also concluded that Transit, under its policy issued to Overland, provides insurance coverage to both Overland and Stewart for use by Overland, of the bus owned by the church, but provides no coverage under that policy to the church.
The above constitutes this Court's findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

V
Also before the Court is the motion of the church for an award of attorneys fees and costs. The church contends that it is entitled to reimbursement of such fees and costs if Nationwide is found to owe it, as an assured, a duty of legal representation. Since we have concluded otherwise, with regard to Nationwide's policy coverage we must reject this argument. The church further asserts that Transit is liable for such reimbursement because it owes the church, as an assured, a duty of legal representation. We have determined though that no policy coverage is provided to the church by Transit, so that this contention too is without merit.
Finally, the church argues that its joinder as a defendant by Transit was not "necessary or proper in this Declaratory Judgment action in which the dispute was solely between the two insurance companies and no relief was sought from or could be sought from defendant Garden of Prayer Church." Under Pennsylvania law:
"The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
(9) Any participant who is awarded counsel fees because of the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."
42 Pa.C.S.A. § 2503(9) (Purdon 1981).
Such an award may be assessed by a federal court in diversity cases, where state law so provides. Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). In the case sub judice, there has been by the church no allegation made, nor any evidence offered to prove, that Transit acted in a manner which was arbitrary, vexatious or in bad faith. Therefore, no award of attorneys fees and costs may be made.