368 F.2d 118
 Laura Ellen WALTER, Administratrix for the Estate of Thomas
Thorpe, Deceased, and Jean McNatt, Administratrix
for the Estate of Elna McNatt Thorpe, Deceased,
v.
Robert Lee DUNLAP, Stanley S. Grimm, and the Midwest Emery
Freight Systems, Inc., an Illinois Corporation and All-State
Insurance Company, Skokie, Illinois, and Security Mutual
Casualty Company, Chicago, Illinois.
Security Mutual Casualty Company, Chicago, Illinois,
Appellant in Nos. 15814 and 15815.
 Nos. 15814, 15815.
 United States Court of Appeals Third Circuit.
 Argued Sept. 30, 1966.
Decided Nov. 7, 1966.
 
 Philip Baskin, Baskin, Boreman, Sachs & Craig, Pittsburgh, Pa. (Gerald S. Lesher, Baskin, Boreman, Sachs & Craig, Pittsburgh, Pa., on the brief), for appellants.
 William C. Walker, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee All-State Ins. Co.
 Before HASTIE, SMITH and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 This appeal is being contested by two insurance companies to determine their correlative obligations in connection with a loss for which a court has found their respective insureds jointly liable.
 
 
 2
 Stanley Grimm, the owner of a tractor-trailer and the regular employer of the vehicle's driver, Robert Dunlap, contracted to lease the vehicle and supply a driver to Midwest Emery Freight Systems, Inc. (hereinafter called 'Midwest') for a single journey upon which Midwest undertook to transport a load of salt for its customers from a point in Ohio to a point in Pennsylvania. Midwest is an interstate trucker, certificated by the Interstate Commerce Commission to transport commodities between Ohio and Pennsylvania.
 
 
 3
 During the journey thus arranged, a fatal collision occurred because of the negligence of the driver, Dumlap. The decedent's administratrix, invoking federal diversity jurisdiction, sued Midwest, Grimm and Dunlap in the District Court for the Western District of Pennsylvania. Pursuant to a jury's verdict, the court entered a money judgment for the plaintiff against both Midwest and Grimm,[1] with each granted contribution against the other. Judgment was also entered for the plaintiff against Dunlap. In addition, Midwest was granted a right of indemnity against Dunlap.
 
 
 4
 Having thus become a judgment creditor, the plaintiff then caused writs of attachment to issue against All-State Insurance Co., Grimm's insurer, and Security Mutual Casualty Co., Midwest's insurer. On motions of these insurers for summary judgment, the court entered judgment against Security Mutual and discharged All-State. Security Mutual now appeals from that judgment.
 
 
 5
 Decision depends upon the meaning and application of certain language in the two policies, which are identical in their relevant provisions. Each is a comprehensive liability automobile insurance policy. Both contain the same provisions concerning owned and hired commercial vehicles and concerning primary and excess insurance.
 
 
 6
 With respect to such commercial vehicles, each policy states that 'the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired sutomobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.' This language without more would cause both policies to cover Dunlap's use of the truck in this case, and it is admitted that Grimm's All-State policy does so. However, it is argued that certain policy exceptions have the effect of excluding Dunlap from the coverage of Midwest's Security Mutual policy.
 
 
 7
 One of the exceptions stated in each policy provides that the insurance shall not cover a person, other than the named insured or his 'employee',[2] while 'engaged in the business of transporting property by automobile * * * unless the accident occurs while such automobile is being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority * * *.' While in this case Midwest is covered as the named insured, it is argued that the quoted exception excludes Dunlap on the theory that the truck was being used in Grimm's business as well as Midwest's, not exclusively in Midwest's as the policy requires. This argument is said to be substantiated by the judicial finding in the plaintiff's suit against Grimm, Midwest and Dunlap that, in driving the truck, the lent servant Dunlap was the agent of both Grimm and Midwest.
 
 
 8
 We think that the fact that Grimm retained a sufficient right of control over Dunlap to warrant a finding that the master-servant relationship persisted is not inconsistent with the conclusion, established by the other facts of the case, that at the time of the accident the truck was being used exclusively in the business of Midwest. Neither is this problem of construing a clause in an insurance contract controlled, as the appellant urges, by other cases[3] which on facts silmilar to ours reason that the lender of a servant retains sufficient authority over him and interest in his conduct to be liable for his torts under the concept of respondeat superior.
 
 
 9
 An analogy may be helpful here. In common parlance and understanding, after the space in a commercial building has been rented to tenants, the structure is described and viewed as being used in the business of the tenants and not in the business of the landlord. It is the leasing of property to produce income rather than the use made of it while rented which constitutes the lessor's business. Any control the lessor may reserve over the premises and any employment of a building superintendent and staff are for the maintenance and protection of his property and do not constitute a proprietary involvement in the current use of the building.
 
 
 10
 By parity of reasoning, the business of Grimm was the renting of vehicles owned by him to others for their use. Any right of control he may have reserved over a driver he supplied to a lessee along with a vehicle was a measure for the safeguarding of his property and the accommodation of the lessee. But this did not make the use of the rented vehicle in hauling for hire the business of the lessor. In this view, leasing property to another and using it for one's self are simply antithetical concepts.
 
 
 11
 The contrary view, that a rented vehicle is being 'used' in the lessor's rental business throught the period of hire is conceptually possible but contrary to our normal and ordinary view of the nature of a lease as transferring the possession and use of the property from lessor to lssee. Moreover, the business of interstate trucking for hire is one in which the present lessor, being unlicensed for that business, could not lawfully engage.
 
 
 12
 Beyond the foregoing analysis, our interpretation and application of the language of the Security Mutual policy is aided by a well established rule of construction. In case of doubt and ambiguity, a provision of an insurance policy will be construed against the insurer who drafted the instrument. Blue Anchor Overall Co., Inc. v. Pennsylvania Lumbermens' Mutual Ins. Co., 1956, 385 Pa. 394, 123 A.2d 413, 59 A.L.R.2d 546; Armon v. Aetna Casualty & Surety Co., 1952, 369 Pa. 465, 87 A.2d 302. One of the most familiar applications of this rule is the construction of exceptions of doubtful scope to avoid any unnecessary narrowing of the principal or general coverage of a policy. Papadell v. Harleysville Mutual Casualty Co., 1963,411 Pa. 214, 191 A.2d 274; Simon v. Hospital Service Assen. of Pittsburgh, 1960, 192 Pa.Super. 68, 159 A.2d 52. Here this rule reinforces the construction toward which we would incline even without it. We conclude, therefore, that both insurance policies covered Dunlap and the use being made of the truck in the circumstances of this case.
 
 
 13
 It remains to determine how the loss should be apportioned. Each policy contains the following paragraph:
 
 
 14
 'OTHER INSURANCE. If the insured has other insurance against a loss covered by this policy the company shall not be liable for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, with respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, the insurance shall be excess insurance over any other valid and collectible insurance.'
 
 
 15
 If the language preceding the semicolon stood alone, it would be arguable that the two insurers should share the loss ratably. However, the proviso clearly makes an owner's insurance excess coverage while a commercial vehicle is leased to another person 'engaged in the business of transporting property be automobile for others', as was Midwest in this case. Thus, whatever rule of apportionment might apply in the absence of controlling language in the policies themselves, the 'Other Insurance' provision explicitly limits the owner's insurance to excess coverage in the present circumstances. There is no such limitation with reference to a lessee's insurance. Therefore, the court below properly gave effect to the explicit language of the policies by imposing the entire burden of indemnity upon Mutual Security.
 
 
 16
 We have considered the appellant's argument that this result is contrary to our holding in Carolina Casualty Ins. Co. v. Pennsylvania T. & F. Mut. Cas. Ins. Co., 3 Cir., 1964, 327 F.2d 324. However, the obvious and controlling difference between the cases is that, in the Carolina Casualty case, the vehicle was not leased. Rather, the owner himself was a carrier who undertook to carry commodities for hire on the occasion of the accident. His insurance policy clearly covered that situation. Moreover, this court found that the policy of the other carrier, for whom the owner was transporting part of the cargo, 'excludes the owner and his driver from coverage'. 327 F.2d at 327. Thus, the Carolina Casualty case did not even present the problem of assigning or allocating the obligation to indemnify between two policies, either of which standing alone would have fully covered the liability in question.
 
 
 17
 The judgments will be affirmed.
 
 
 
 [1]
 Actually, there were two judgments, in favor of the estates of two members of a family who were killed in the accident
 
 
 [2]
 The term 'employee' as used in this provision is defined to exclude a driver furnished to the named insured with an automobile hired by the named insured
 
 
 [3]
 E.g., Yorston v. Pennell, 1955, 397 Pa. 28, 153 A.2d 255, 85 A.L.R.2d 872; Thatcher v. Pierce, 1942, 281 Pa. 16, 125 A. 302. The Thatcher case suggests a distinction, in the case of a car leased with a driver, between the driving of the car as the business of the lessor and the use made of the car 'while engaged in the service for which leased'. See 281 Pa. at 23, 125 A. at 304