TRANSPORT INDEMNITY
COMPANY, Appellant,

v.

HOME INDEMNITY COMPANY,
Appellee.

No. 75–1753.

United States Court of Appeals,
Third Circuit.

Argued Jan. 16, 1976.

Decided April 29, 1976.

John J. O'Brien, Jr., O'Brien & O'Brien, Roger J. Harrington, Philadelphia, Pa., for appellant, Transport Indem. Co.

Edward J. Marcantonio, Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellee, Home Indem. Co.

Before GIBBONS, FORMAN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

On November 10, 1970, a truck leased by Lansdale Transportation Company (hereafter Lansdale) from Lancaster Truck Leasing Company (hereafter Lancaster) was involved in a collision with a passenger car. The driver and passengers of that car, alleging serious injuries, filed actions in the Court of Common Pleas, Bucks County, Pennsylvania, in October 1972 against the driver of the truck, an employee of Lansdale, Lansdale and Lancaster. At the time of the accident Lansdale was the named insured under a policy of insurance issued by Appellant, Transport Indemnity Company (hereafter Transport); Lancaster held insurance policies with Appellee, Home Indemnity Company (hereafter Home). Lansdale and Transport called on Home to take over the defense of the state court actions. On Home's refusal, Transport undertook the defense of Lansdale and, alleging diversity jurisdiction,[1] filed this suit in the United States District Court for the Eastern District of Pennsylvania for a judgment pursuant to 28 U.S.C. § 2201 et seq., declaring Home's responsibility to defend the lawsuits, to indemnify Lansdale for any judgment and to reimburse Transport for costs already incurred. Both parties moved for summary judgment. The lease and insurance contracts were made part of the record.

The main thrust of Transport's argument in the District Court and on appeal was that the coverage extended to Lansdale by its policy was "excess" coverage only and that Lansdale's use of the truck was also insured under the policy issued by Home to Lancaster, either under the "Comprehensive General Liability" insurance, which included coverage for the operation of "mobile equipment," or alternatively under the "Comprehensive Automobile Liability" insurance. This latter insurance had a Truckmen's endorsement which in one clause, (b), seemed to exclude persons engaged in transporting property for others, and therefore to exclude the operation of the truck in the occurrence at issue, but in another clause, (f), to extend excess insurance in such circumstances. Home in response argued that the truck leased to Lansdale was, under the definitions of the policies, clearly not "mobile equipment" but an automobile; that the Truckmen's endorsement excluded any coverage from the Comprehensive Automobile Liability insurance; and that it was clear from the lease between Lancaster and Lansdale that Lansdale's insurer was to provide primary insurance.

---

1. The allegations of diversity jurisdiction in the pleadings were inadequate to establish jurisdiction under 28 U.S.C. § 1332(c) since the original complaint showed only the principal place of business of each corporation and not the state of incorporation. This court was obliged to bring this inadequacy of pleadings to the attention of counsel. Cf. *McCurdy v. Greyhound* *Corp.*, 346 F.2d 224, 225 (3d Cir. 1965). Although appellee refused to stipulate its state of incorporation, appellants submitted ample proof that appellee was incorporated in the State of New Hampshire and that diversity in fact existed. Amendment of pleadings was then allowed pursuant to 28 U.S.C. § 1653.

In an opinion filed May 12, 1975, the District Judge found that there was "a justiciable controversy between the parties, susceptible of determination by a declaratory judgment."[2] The court held that the truck was not "mobile equipment" under the terms of the Comprehensive General Liability policy, which policy explicitly excluded coverage for injuries resulting from the use of automobiles; that the Comprehensive Automobile Liability insurance would cover the occurrence but for the exclusion found in the Truckmen's endorsement; and that the lease between Lancaster and Lansdale made Lansdale responsible to third parties for any injuries which occurred while the trucks were operated by Lansdale. The court concluded that Home's policy extended no coverage of the accident and that therefore the "excess clause" of Transport's policy never came into operation. The District Judge accordingly denied Transport's motion for summary judgment and granted Home's cross-motion. This appeal was taken timely pursuant to 28 U.S.C. § 1291.

## THE LEASE

The contract between Lancaster and Lansdale providing for the lease of the trucks allocated the responsibilities for insurance. Lancaster undertook to provide fire, theft, comprehensive and collision insurance on each vehicle; Lansdale covenanted:

"5(n) To obtain and keep in force at its sole expense, except as hereinafter provided, a policy or policies of insurance in one or more reputable insurance companies authorized to conduct business in the States wherein said motor vehicles are operated, in favor of the lessee, certificates to be supplied to lessor, against liability with respect to third parties . . . for death or injuries to person or damage to property resulting from the operation of lessor's motor vehicles in lessee's usual course of business by lessee, its servants, agents, or employees. Provided, however, that the minimum liability assumed by such insurance company or companies shall not be less than $200,-000.00 for death or injury to any individuals in any single accident, and not less than $100,000.00 to any one individual, and not less than a $50,000.00 limit for damage to property for each and every accident."

and

"5(m) To indemnify and save lessor harmless from any and all claims for injuries . . . and further to indemnify and save lessor harmless from all loss and damage lessor may sustain or suffer because of the death of, injury to, or damage to the property of any third person, as a result of, in whole or in part, the use or maintenance of said equipment or any part thereof while in the custody, possession or control of lessee . . . ."[3]

Home argues that it is clear from the lease that Lansdale was to carry third-party

2. In *Nationwide Mutual Insurance Co. v. Fidelity and Casualty Co. of New York*, 286 F.2d 91 (1961), this court held that a dispute between two insurers as to which should defend and be responsible for indemnification of any liability found in a pending action against their insured did not present a justiciable controversy. This holding ignored our opinion in *Federal Insurance Co. v. Michigan Mutual Liability Co.*, 277 F.2d 442 (1960) where a declaratory judgment was affirmed in an identical situation without any discussion of jurisdiction or ripeness of the controversy. Five years after *Nationwide*, in *Globe Indemnity Co. v. St. Paul Fire and Marine Insurance Co.*, 369 F.2d 102 (3d Cir. 1966), this court held that a suit by one insurer against another for a declaration as to which owed the duty to defend a wrongful death action did present a justiciable controversy which the district court could in its discretion determine by a declaratory judgment. Though the court in *Globe Indemnity* refrained from overruling *Nationwide*, the logic of the later case leaves the continued vitality of *Nationwide* in considerable doubt. In this case where neither party contests the district court's holding that the controversy is ripe for determination by declaratory judgment, and the issue has not been briefed or argued, there appears to be no necessity to decide whether *Nationwide* has any remaining authority.

3. Exhibits to Appendix at 57B.

coverage while using Lancaster's vehicles, that the coverage was to be at least $200,-000.00 per accident and that the insurance contract "by clever wording" makes "only a token compliance with the terms of the lease"[4] in an attempt to avoid the lessee's obligations.

It is true that if the liability of the insurance carriers was governed by the contract between Lancaster and Lansdale, there could be little doubt that Transport, who issued a policy to Lansdale, would be responsible for the liability resulting from "injuries arising from the operation of lessor's motor vehicles in lessee's usual course of business." However, the insurance carriers were not parties to this contract and their liabilities are governed by their contracts with the insureds, and they cannot be held to anything beyond those contracted duties. *Carolina Casualty Ins. Co. v. Transport Indemnity Co.*, 488 F.2d 790, 794 (10th Cir. 1973); *Baltimore and Pittsburgh Motor Express v. Sustrick*, 286 F.Supp. 524, 528 (W.D.Pa.1968).[5] Under the terms of paragraph 5(n) of the lease quoted above certificates of insurance were to be supplied to Lancaster, and it could have pursued its contract rights if it found the insurance purchased by Lansdale inadequate. The contractual obligations assumed by Lansdale to Lancaster cannot extend the obligations assumed by Transport to its named insured, Lansdale, beyond the plain language of its contract. Nor does the clause 5(m) of the lease change the result, since if Lansdale is found to be covered as an additional insured under Home's policy, Home owes insurance coverage directly to Lansdale. If when liability is imposed on Lansdale it has a right to insurance coverage, the indemnity provision does not come into play. Cf. *Allstate Insurance Co. v. General Fire and Casualty Co.*, 348 F.Supp. 682, 686 (E.D.Pa.1972).

**4.** Appellee's Brief at 17.

**5.** See also *Walters v. Dunlap*, 250 F.Supp. 76 at 80 (W.D.Pa.1966) aff'd 368 F.2d 118 "under Pennsylvania law the decision must rest upon a construction of the language employed by the respective insurers and not upon any so called

## TRANSPORT'S POLICY

The insurance coverage that Lansdale actually purchased from Transport came in two attached policies. No. 06201 provided coverage for bodily and property damage, for owned and non-owned automobiles, with a limit of $10,000.00 for each occurrence. No. 06201–X, clearly labeled "Excess Insurance Contract," provided additional insurance with a limit of $2,990,000.00 on each occurrence. The latter contract stipulated that it afforded the insured

"the same coverage as is provided by the underlying primary policy issued by Transport Indemnity Company, however, it is expressly agreed that:

"Liability shall attach to the Company only after all underlying insurers have paid or have been held liable to pay the full amount of their liability . . . ."[6]

The policy also included an "Other Insurance" clause which stated:

"If there is other insurance or self-insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance over and above the applicable amounts of all such other insurance or self-insurance."[7]

This clause appears as a condition of the policy and might therefore seem to apply to the initial $10,000.00 coverage as well as to the excess insurance of Policy No. 06201–X. Transport argues that all the insurance under its policy is excess insurance and never discusses what is meant by the reference to the $10,000.00 policy as "the underlying primary policy." If the policy is read as a whole, there would seem to be contradiction between the holding out of the $10,000.00 coverage as primary insurance and the "other insurance" clause which appears later. Such contradiction and ambiguity should be resolved against the insurer, "if it is determined that the

primary tort-feasor doctrine or upon any arbitrary rule or circumstance."

**6.** Exhibits to Appendix at 1B.

**7.** *Id.* at 13B.

language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, we must construe that language most strongly against the insurer and accept the construction most favorable to the insured." *Blocker v. Aetna*, 232 Pa.Super. 111, 114, 332 A.2d 476, 478 (1975). Thus if the policy is read as a whole, it would appear that the $10,000.00 initial policy is deliberately termed primary insurance and should not be reduced by the contradictory clause. It seems clear that Transport contracted to provide an initial $10,000.00 primary coverage and a large amount of excess insurance. No explanation of the relationship between the two policies is given and the clear language quoted above on the front page of No. 06201–X does not seem susceptible of any other construction.

## HOME'S POLICY

The District Court held that there was no coverage of the liability at issue under the policy issued by Home to Lancaster. Transport argues for the liability of Home on two different grounds: first, that Lansdale was covered as an additional insured under the provisions of the Comprehensive General Liability policy and, secondly, that it was an additional insured under the Comprehensive Automobile Liability policy.

A. *The Comprehensive General Liability Insurance*

■ The argument that Lansdale was a "person insured" under the Comprehensive General Liability policy relies on the following language in the definition of Persons Insured:

"(e) with respect to the operation, for the purpose of locomotion upon a public highway, of *mobile equipment* registered under any motor vehicle registration law

. . .

"(ii) any other person while operating with permission of the *named insured* any such equipment registered in the

name of the *named insured* and any person or organization legally responsible for such operation, but only if there is no other valid or collectible insurance available, either on a primary or excess basis, to such person or organization." [8]

Transport argues that the truck is mobile equipment and that therefore Lansdale is covered under this section. The District Court rightly rejected the argument. Throughout the policy, terms which are found defined in the policy are printed in boldface type. Mobile equipment is so printed in the above section. The definition of mobile equipment found in the policy reads:

" '*mobile equipment*' means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment." [9]

This definition clearly does not cover the truck which would instead be covered by the policy's definition:

" '*automobile*' means a land motor vehicle, trailer or semi-trailer designed for use on public roads (including any machinery or apparatus attached thereto) but does not include *mobile equipment*." [10]

8. *Id.* at 42B.

9. *Id.* at 21B.

10. *Id.* at 21B.

This Comprehensive General Liability policy, however, excludes from coverage

"(b) . . . *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading or unloading of

"(1) *any automobile* or aircraft owned or operated by or rented or loaned to *the named insured*." [11]

Coverage for liability for bodily injury and property damage arising out of ownership or use of automobiles, which term seems clearly to include trucks, is not afforded by this insurance because it is obtained instead from the Comprehensive Automobile Liability insurance.

## B. *The Comprehensive Automobile Liability Insurance*

▮ The Comprehensive Automobile Liability policy on its face covers the occurrence. The policy covers bodily injury and property damage and the definition of "Persons Insured" includes:

"(c) any other person while using an owned automobile or hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . . ." [12]

Lansdale as a lessee was clearly a permitted user and would thus seem covered for the use which gave rise to the liability at issue. Home argues, however, that an endorsement to the Comprehensive Automobile Liability insurance titled "Truckmen—Form A" supersedes this coverage and excludes Lansdale. The endorsement is a peculiarly incomprehensible document. Its relevant provisions read:

"It is agreed that the insurance applies with respect to any owned automobile, hired automobile and, while being used in the business of the named insured, non-owned automobile, subject to the following additional provisions:

&ast; &ast; &ast; &ast; &ast; &ast;

"(b) Except with respect to the named insured or an employee thereof, but subject otherwise to the 'Persons Insured' provision, the insurance does not cover as an insured any person or organization, or any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others under any of the following conditions:

"(1) if the bodily injury or property damage occurs while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, but this limitation shall not apply to an automobile while en route, at the request of the named insured, to engage in such exclusive use and not transporting property for others; or

&ast; &ast; &ast; &ast; &ast; &ast;

"(f) With respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, or any hired private passenger automobile, the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance available to the insured. Otherwise, the insurance under this endorsement is primary insurance." [13]

At the time of the collision Lansdale was using the truck on its own business to transport property. Therefore coverage would seem to be excluded by clause (b).

Transport argues, however, that the exclusion in (b) is by its own terms "subject otherwise to the persons insured provision"; that the person insured clause of the Comprehensive Automobile Liability policy does on its face cover Lansdale and that therefore the Truckmen's endorsement does not exclude coverage of Lansdale.

---

11. *Id.* at 42B.

12. *Id.* at 45B.

13. *Id.* at 34B–35B.

The District Court in discussing whether the endorsement limits the Person Insured provision, or whether instead it is limited by the coverage of the Person Insured provision, looked primarily to the lease between Lansdale and Lancaster and found that it was the intent of the parties that Lansdale's insurance, not Lancaster's, should govern any liabilities arising from use of the leased trucks. But the meaning of clause (b) of the endorsement should be found from within the insurance contract if possible. The District Court in its analysis ignored clause (f) of the endorsement quoted above.[14]

If clause (b) were given the meaning attributed to it by Home, that "there is no coverage unless the automobile [engaged in the business of transporting property] is used exclusively in the business of the named insured,"[15] then it would be in direct contradiction to (f), which extends excess insurance in just such cases. If there is such contradiction, clause (f) extending excess coverage must be preferred over the clause absolutely denying it. If, on the other hand, clause (b) is read as subject to the Persons Insured provision, then insurance exists under the endorsement, but clause (f) operates to define such insurance as excess insurance only. Thus by whichever route, we arrive at the same conclusion: that Home's policy did afford excess insurance coverage to the occurrence.[16]

CONCLUSION

■ In the policy issued by Transport to its named insured Lansdale, it undertook to investigate, negotiate settlement and defend suits pertinent to losses reported to the company. The fact that a policy written by Home for Lancaster also covers liabilities arising out of the occurrence on an excess basis does not relieve Transport of the obligation to defend its named insured.

■ Although Transport urged that the general rule in Pennsylvania places primary responsibility for liability on the owner's insurer, its cited cases are in fact distinguishable. In *Grasberger v. Liebert and Obert*, 335 Pa. 491, 6 A.2d 925 (1939), and in *Carolina Casualty Ins. Co. v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Co.*, 327 F.2d 324 (3d Cir. 1964), the owner's employee was driving the truck involved in an accident. Indeed in *Carolina Casualty*, the court found that there was no lease between the insured parties. In both cases a careful reading of the insurance contracts made coverage for the nonowned vehicles "excess coverage," thereby leaving the owner with primary coverage. In *Grasberger*, 335 Pa. at 494, 6 A.2d 925, an escape clause in the owner's policy was not permitted to avoid this responsibility. Moreover, as the District Court recognized, a Truckmen's endorsement in an owner's policy can reverse any presumption that primary liability attaches to the owner's insurance. See *Walters v. Dunlap*, 368 F.2d 118 (3d Cir. 1966) and *Allstate Ins. Co. v. General Fire and Casualty Co.*, 348 F.Supp. 682 (E.D.Pa. 1972). In *Dunlap*, under the owner's contract with his insurer, his insurance afforded only excess coverage when a vehicle was leased to another person engaged in the business of transporting property by automobile for others; and since there was no

---

**14.** Transport had drawn the attention of the court to this clause in its pleadings. See Appendix at 42A.

**15.** Appellee's Brief at 13.

**16.** Both in its brief and at oral argument Home's counsel seemed to vacillate between denying all coverage and admitting excess insurance coverage. See for example brief, p. 13:

"   .   .   .   There is no conflict. Under b(1) there is no coverage unless the automobile is used exclusively in the business of the named insured. Under f, if the automobile is leased to others, Appellee's insurance is excess over the valid collectible other insurance. Of course, if there is no other insurance, then it would become primary insurance.

"These two clauses are not at all irreconcilable. They merely mean there is no coverage where the vehicle is not used in the business of the named insured, or, if the vehicle is leased to others, there might be insurance granted under the Appellee's policy, but its insurance coverage would be considered excess over any other valid, collectible insurance. If there were no other valid, collectible insurance, then in those given instances, it would become primary coverage."

such limitation in the lessee's policy, the entire burden was placed on the lessee's insurer. By contrast in this case it is clear both insurers contracted to provide excess insurance in the occurrence at issue.

■ The primary coverage afforded by Transport's policy extends to the first $10,-000.00. If ultimately liability is established beyond that amount, it must be prorated between the two carriers of excess insurance according to the limits in the policies. *Green v. Benson*, 271 F.Supp. 90 (E.D.Pa. 1967).[17]

The order of the District Court filed May 12, 1975 will be vacated and the case is remanded with instructions to enter a judgment consistent with this opinion. Costs shall be borne by each of the parties hereto.

---

**17.** See also Annot., 69 A.L.R.2d 1122 (1960); and "When two or more policies on the same risk contain consistent excess clauses, the courts generally require proration." 2 R. H. Long, The Law of Liability Insurance § 22.06 (1975).