## Horace Mann Insurance Company v. CNA Insurance Company

*Robert G. Rose*, for plaintiffs.
*Eugene E. Fike, II*, for defendants.

SHAULIS, *J.*, May 28, 1982—This case is before the court on cross motions for judgment in an action for declaratory judgment. The parties have supplied the court with a statement of stipulated facts and thorough briefs. As agreed by the parties, no oral argument was held. The issue before the court is a narrow one; if the policies in question are

both determined to be "excess" policies, what is the proper apportionment of the funds between the parties involved.

## FACTS

The facts from which this case arises are derived directly from those involved in the lawsuit filed to no. 54 Civil 1979 in the Court of Common Pleas of Somerset County. In that action the plaintiffs allege that John Chobany, the Superintendent of the Conemaugh Township Area School District, and purporting to act in its behalf, wrongfully caused plaintiffs to mistakenly believe that the school district would make payment for certain rentals, maintenance, repairs and wages of plaintiffs. When the school district refused to make the payments, plaintiffs initiated the lawsuit. The parties to this action both insured Chobany at the time of the incident. CNA also insured the school district. Both parties claim their policies are excess insurance. CNA also claims that Horace Mann's policy is primary. If, however, both policies are determined to be excess, the parties cannot agree on the proper apportionment. Horace Mann argues that the division should be in proportion to the respective policy limits. CNA asserts that it should be divided equally.

## DISCUSSION

Initially, it is the conclusion of this court that Horace Mann's policy is not primary as alleged by CNA. The unambigious language of the policy itself demonstrates this clearly. Paragraph six under conditions of the policy sets it forth expressly:

6. "OTHER INSURANCE. In consideration of the nominal premium charged for this policy the

company shall not be liable for any amount other than the excess over any other valid and collectible insurance applicable to a loss hereunder."

We also do not believe that when comparing the two policies themselves, Horace Mann's is primary to CNA's. We refuse to engage in the comparative interpretation of the policy language, urged by CNA, when the language seems to us to be so clear. From a reasonable reading, each insurer, through its excess clause,[1] seeks to fix the initial loss on any other applicable insurance, saving for itself the role as secondary insurer. See Carriers Insurance Company v. American Policyholders' Insurance Company, 404 A. 2d 216, 219 (Maine, 1979).

Generally, when it is determined that two insurance policies cover the same risk and each contains an excess clause, the clauses are disregarded and the coverage provided is held to be concurrent: Transport Indemnity Company v. Home Indemnity Company, 535 F. 2d 232 (3rd Cir. 1976); Carriers Insurance Company v. American Policyholders' Insurance Company, supra, at 220, Annot., 69 A.L.R. 2d 1122 (1960). Where the problem arises and where the courts disagree, is when it comes to determining the relative liability each carrier must bear to the loss.

It must first be noted that, as indicated by the parties, there is no applicable Pennsylvania Appellate Court decision regarding this specific issue.

---

1. CNA's excess insurance clause reads as follows:

IV. Exclusions (b)(1):

"The insurer shall not be liable to make any payment for loss in connection with any claim against the assureds. . . . (1) which is insured by another policy or policies except in respect of any excess over and above the amount or amounts of such other policy or policies."

The Federal courts as well, do no more than interpret the Pennsylvania lower court opinions and attempt to predict how the appellate courts will rule. As such, they provide us with no precedent and we are not bound by their rulings. However, a number of jurisdictions have considered the question and have resolved the issue.

We have carefully reviewed the briefs of both parties and have thoroughly examined the authorities cited therein. We have as well undertaken an extensive research of the case law in this area and have found what we believe to be the definitive analysis of this unsettled and controversial issue. The opinion, from the Supreme Judicial Court of Maine, Carriers Insurance Company v. American Policyholders' Insurance Company, supra, expresses our thinking precisely and we adopt its reasonings as our own. The pertinent portion of the opinion is printed below:

"Having found that both policies are to be considered 'primary,' we are brought to the question of how should the liability be prorated where the total loss does not exceed the limits of either policy. American argues that the loss should be prorated according to the policy limits. Because Carriers provided $2,990,000 of coverage compared to only $250,000 for American, appellant contends that Carriers should bear close to ninety percent of the settlement cost. Carriers, on the other hand, argues that the loss should be shared equally between the insurers, the approach adopted by the presiding Justice.

"There are three basic methods of proration. The majority rule, the one urged upon by appellant, prorates liability according to the limits contained in each policy. The next, which is seldom followed,

prorates on the basis of the premiums paid to each insurer. Finally, there is a minority but growing number of courts which prorate the loss equally up to the limits of the lower policy, the approach adopted by the court below. (Footnotes omitted.)

"Each method is grounded on the premises, often unarticulated, that on equitable principles the loss should be shared among the insurers either on the basis of the risk that they have undertaken or the benefit they have received. In its clearest expression, the majority rule has been justified on the theory that 'the burden imposed on each insurer is generally proportional to the benefit which he received, since the size of the premium is most always directly related to the size of the policy.' (Citations omitted.)

"On precisely these grounds, the majority rule has been criticized since '[i]t is commonly known that the cost of liability insurance does not increase proportionately with the policy limits.' (Citations omitted.) Once minimum coverage has been obtained, significant supplemental coverage can be provided at only a modest increase in cost.

"On the other hand, if the majority rule is less equitable than that minority approach which apportions on the basis of premiums received, it has the advantage of facile application. Unless the multiple policies cover the identical risks, there would be too many variables affecting the premiums to permit them to serve as a benchmark for an equitable adjustment. (Citations omitted.)

"The minority rule adopted by the presiding Justice utilizes the best aspects of both approaches without the limitations. Like the majority rule, it is easy to administer. It would simply require each company to contribute equally until the limits of the smaller policy were exhausted, with any remaining

portion of the loss then being paid from the larger policy up to its limits. (Citations omitted.)

" . . . Moreover, the majority rule unfairly discriminates against the larger policy by apportioning the loss in proportion to the respective policy limits, utterly forgetting that both insurers, by their contracts, have in fact agreed to cover a loss up to the limits of the lesser policy. Until that point is reached, the majority rule amounts to no more than an unacceptable subsidy from the high-coverage to the low-coverage carrier. We are in complete accord with the presiding Justice when he adopted the persuasive opinion of Judge Doyle in Ruan Transport Corp. v. Truck Rentals, Inc., supra, note 7 at 696.

'The majority method of prorating operates inequitably in its differentiating treatment of the high-loss and low-loss insurer. In return for a greater premium the insurer providing higher coverage has undertaken to protect the insured against accidents involving high losses. Yet because of this undertaking to protect against high loss the larger insurer is in an unfavorable position vis-a-vis the other insurer even in cases of low loss, since under the majority method of prorating the insurer affording the greater maximum coverage pays the greater segment of any loss incurred, regardless of the amount of the loss. This seems inequitable since both insurers have equally undertaken to insure against the low-loss accident.'

"The majority rule would hardly encourage an insurer from increasing its coverage where it is aware that there is a lesser policy. It would increase the insurer's potential liability not only in the high-risk situation which the additional premiums are presumably meant to recompense, but it would

have the untoward effect of increasing liability in the more likely to occur low-risk situation. Carried to its extreme, it would further increase the cost of additional insurance thereby reducing the likelihood that an insured would choose such coverage. (Citation omitted.) The court would be reluctant to adopt a rule which would seemingly have little social utility."

One more matter must be considered, the treatment to be given to the deductible provision in the CNA policy. We emphasize in this regard that a major part of the purpose of the apportionment described above is to balance the liability between the insurers in proportion to the relative risks for which each contracted. A policy which contains a deductible provision clearly assumes less economic risk than one without, and that fact should not be overlooked in making the final allocation of liability. It is our belief that the appropriate deductible[2] should be given effect after the original apportionment has been made by reducing CNA's liability accordingly (subsequently increasing Horace Mann's). See Insurance Company of North America v. Continental Casualty Company, 431 F.Supp. 316 (E.D.Pa. 1977) rev.'d on other grounds, 575 F. 2d 1070 (3rd Cir. 1978) for similar reasoning.

## DECREE NISI

Now, May 28, 1982, it is decreed as follows:

1. That plaintiff, Horace Mann Insurance Company and defendant, CNA Insurance Company,

---

2. It is the court's understanding that CNA had two different deductibles covering two separate periods regarding the facts in no. 54 Civil 1979: Statement of Stipulated Facts, Paragraph 2. Whichever time period the operative facts fall within, determines directly the deductible to be used.

have provided insurance for certain claims made against John Chobany in the lawsuit filed to no. 54 Civil 1979 in the Court of Common Pleas of Somerset County, Pennsylvania;

2. That liability with regard to those claims shall be apportioned in the following manner:

(a) Equally, up to the maximum limits of the lower insurance policy (Horace Mann's $500,000),

(b) Any recovery over those limits to be paid by the insurer providing the higher insurance policy (CNA—$1,000,000),

(c) Adjusted appropriately considering the applicable (CNA) deductible.

Unless exceptions are filed within ten days, this decree nisi shall be entered by the prothonotary on praecipe as the final decree: P.R.Civ.P. 1519.