**PRESTON TRUCKING COMPANY, INC., a corporation; and Protective Insurance Company, Inc., a corporation, Plaintiffs,**

v.

**CAROLINA CASUALTY INSURANCE COMPANY, Defendant.**

Civ. A. No. 83–1691.

United States District Court, W.D. Pennsylvania.

Jan. 26, 1989.

Richard J. Mills, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for plaintiffs.

Robert B. Truel, Truel & Ploeger, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

Plaintiffs, Preston Trucking Company, Inc. ("Preston") and Protective Insurance Company, Inc. ("Protective"), brought this action for declaratory judgment against the defendant Carolina Casualty Insurance Company ("Carolina") seeking a judgment declaring:

(a) that a policy of insurance issued by Carolina to one Franklin E. Safrit ("Safrit") afforded primary insurance coverage for a certain accident which occurred in Tioga County, Pennsylvania, on December 16, 1981; and,

(b) that a so-called indemnity contract between Protective and Preston either was not applicable or was excess insurance coverage for that accident; and,

(c) that Carolina be directed to reimburse Preston and Protective for all sums paid by or on behalf of Preston in satisfaction of all claims arising out of that accident and for all costs and legal fees incurred in the investigation, negotiation and settlement of said claims.

### Findings of Fact

The parties have submitted the case to the court on the following agreed finding of fact, which the court adopts:

1. On or about December 16, 1981, Franklin E. Safrit ("Safrit"), Box 131, Hurlock, Maryland, was the owner of a certain

1971 truck-tractor and a 1970 semi-trailer ("Safrit rig").

2. At all times material hereto, defendant, Carolina Casualty Insurance Company, Inc., maintained in full force and effect a policy of automobile liability insurance which named Franklin E. Safrit as the named insured. An authentic copy of that policy of insurance is incorporated into plaintiffs' complaint.

3. At all times material hereto, the Safrit rig was being operated by Safrit under a certain lease agreement between him as lessor and plaintiff Preston as lessee. An authentic copy that lease agreement is attached to the parties' agreed to findings of fact as Exhibit "A".[1]

4. Preston is a duly authorized motor carrier.

5. On December 16, 1981, while operating the Safrit rig, Safrit was involved in a motor vehicle accident in Tioga County, Pennsylvania. The accident caused the deaths of four people and personal injuries to two others.

6. Plaintiffs, Preston and Protective, Inc., and defendant, Carolina, have agreed that any settlement totalling less than $400,000.00 for all of the claims arising out of the above accident would be fair and reasonable, and they also agreed that the execution of release documents in satisfaction of those claims would in no way alter or affect the rights, duties, and obligations of plaintiffs and defendant as to those claims. The parties agreed that an authentic copy of a telex evidencing said agreement was attached to the agreed to facts as Exhibit "B".

7. Plaintiffs have, in accordance with the agreement reached with Carolina, settled all claims resulting out of the above accident for a total amount of less than $400,000.00.

8. All of the injuries and deaths arising out of the above accident resulted from the sole negligence of Safrit.

9. In addition to the above agreed facts adopted by the Court, the Court finds as a fact that the documents attached to the plaintiffs' complaint as Exhibit "B" consisting of a document bearing a designation "No. X–424" and one bearing a designation "No. X–420" and the attachments to each are authentic copies of documents which the court finds as a fact were policies of insurance issued by plaintiff Protective to "Frontier Trucking Division Preston Trucking Co., Inc." (No. X–424) and to "Preston Trucking Co./Preston Trucking Co., Inc." (No. X–420).[2]

Based on the allegations of ¶¶ 1–4 of the plaintiffs' complaint, which have been admitted by the defendant, the court further finds as facts:

10. That Preston is a citizen of the state of Maryland, and not of Florida.

11. That Protective is a citizen of the state of Indiana, and not of Florida.

12. That Carolina is a citizen of the state of Florida, and not of Maryland or Indiana.

13. That the amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.00.

## Discussion

The Safrit rig involved in the accident on December 16, 1981, was owned by Safrit and leased to Preston under a written lease agreement which provided that Safrit

---

1. Relevant portions of the Carolina policy, the lease referred to in finding 3, and the plaintiffs' insurance policies referred to in finding 9, *infra*, will be quoted in this opinion, there being no need to reproduce these documents in their entirety.

2. This finding is drawn from ¶ 9 of plaintiffs complaint and defendant's answer thereto, which with immaterial exceptions essentially admits the substance of ¶ 9 of plaintiffs' complaint which is contained in our finding 9. In addition, the parties in their briefs have treated the documents referred to above as authentic. While the plaintiffs in their original brief seemed to argue at pages 7–12 that the documents making up exhibit B to the complaint were not insurance contracts, but rather were "surety" bonds or "excess indemnity contracts," in their supplemental brief at page 3 they conceded that these documents were a "species of insurance." The court is satisfied from its independent analysis of the documents that they are indeed insurance contracts.

would supply a driver who would be Preston's employee.

At the time of the accident, Safrit was that driver, and he was then and there under the lease agreement acting within the course and scope of his employment by Preston. The deaths and injuries which arose out of the accident resulted solely from Safrit's negligence. (Finding 8). Under those facts, of course, both Safrit and Preston would be liable for the damages resulting from the accident. Safrit directly, because his negligence caused the injuries and deaths, and Preston, derivatively, under the doctrine of *respondeat superior,* because at the time of the accident Safrit was Preston's employee acting within the course and scope of his employment.

The parties do not dispute any of the foregoing. Neither do they really dispute that the *basic* policies of insurance issued by Protective to Preston/Frontier as named insureds or the basic policy of insurance issued by Carolina to Safrit as a named insured provided *primary* insurance coverage for the damages arising out of the accident to their respective *named insureds.*

Beyond this point, however, the parties part company. Plaintiffs contend that Preston is an insured under the Carolina policy issued to Safrit as the *named* insured and that Safrit is not an insured under the policies issued by Protective to Preston/Frontier. Therefore, plaintiffs argue, the Carolina policy provided primary insurance for the accident and, at best, the Protective policies only provided excess insurance, which did not come into effect because the Carolina policy limits of coverage were sufficient to satisfy the settlements arrived at by plaintiffs with the accident claimants.

In addition, plaintiffs contend that since Preston's liability stems from the sole negligence of its employee, Safrit, plaintiffs are entitled to indemnity from Safrit and Carolina must respond under the policy which it issued to Safrit which contracted to pay on his behalf "all sums which [he] shall become legally obligated to pay as damages ...", (Exhibit A to Plaintiffs' Complaint, Finding 2), as a result of occurrences such as the December 16, 1981, accident.

Defendant denies any liability to respond with primary insurance coverage for the December 16, 1981, accident. It contends that its insurance coverage was *at best* excess insurance because of a so-called Truckmen's Endorsement which was attached to its basic policy and that this excess insurance never came into effect because the coverage limits of plaintiffs' policies were adequate to satisfy the settlements made by plaintiffs. In addition, it argues that it is not liable to respond in indemnity under the complaint in this case because this issue was not raised in plaintiffs' complaint and by the time that it was raised in their briefs the statute of limitations had run. In any event, defendant argues, it would be liable only to indemnify plaintiff—Preston and not plaintiff—Protective and since Preston paid only its $25,000 deductible, that is the maximum for which the defendant could be liable.

For the reasons which follow, we hold that the Protective policies provided *primary* liability insurance coverage and that the Carolina policy provided, at most, only excess liability insurance coverage for the damages arising out of the December 16, 1981, accident and that defendant is not liable to reimburse or indemnify either of the plaintiffs either as a primary insurer, which was directly liable to provide coverage for the third-party claims arising out of the accident, or on a claim for indemnity by either plaintiff or for subrogation by Protective.

The basic Carolina policy was issued to Franklin E. Safrit as the *named insured.* It provided with regard to the persons insured as follows:

Persons Insured

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) ...

(c) any other person while using an owned automobile ... with the permission of the named insured, provided his

actual operation ... is within the scope of such permission ....

(Exhibit A to Plaintiffs' Complaint, Finding 2).

The parties agree that the plaintiff Preston was an insured under the foregoing provision, since the Safrit rig covered by the Carolina policy was being used by Preston with Safrit's permission under the terms of the lease agreement. (*See* Finding 3).

It is also clear that the *basic* Carolina policy provided insurance coverage for *both* Safrit *and* Preston for the December 16, 1981, accident, since by the terms of the basic policy Carolina agreed to,

> ... pay on behalf of the insured all sums [up to the limits of the policy, which were $500,000. combined single limits for bodily injury and property damage] which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> ... caused by an occurrence and arising out of the ownership, maintenance or use ... of an owned automobile ... and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such bodily injury or property damage....

(Exhibit A to Plaintiffs' Complaint, Finding 2). (emphasis and matter in brackets supplied).

It follows, therefore, that unless other provisions of the Carolina policy excluded or modified the obligations which Carolina assumed under the foregoing provisions of the *basic* policy, Carolina had at the very least an equal responsibility with Protective to defend and indemnify Preston as to claims arising out of the December 16, 1981, accident, and a primary obligation to defend an indemnify Safrit for such claims.

The Truckmen's Endorsement which was part of the Carolina policy provides in its pertinent part as follows:

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

BASIC AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

TRUCKMEN

. . . . .

It is agreed that the insurance applies with respect to the *automobile* described herein or designated in the policy as subject to this endorsement [the Safrit rig]. Subject to the following additional provisions:

(a) ...

(b) Except with respect to the *named insured* or an employee thereof, but subject otherwise to the "Persons Insured" provision, the insurance does not cover as an *insured* any person or organization or any agent or employee thereof, engaged in the business of transporting property by *automobile* for the *named insured* or for others under any of the following conditions.

(1) if the *bodily injury* or *property damage* occurs while such *automobile* is not being used exclusively in the business of the *named insured* and over a route the *named insured* is authorized to serve by federal or public authority ..., or

(2) if such person or organization so engaged is subject to the security requirements of any motor carrier law and satisfies any such requirements by any means other than automobile liability insurance, or

(3) if such person or organization so engaged is insured under an automobile liability insurance policy which affords coverage for *automobiles* hired by such person or organization but which does not insure on a direct primary basis the owners of such *automobiles* and the agents and employees of such owners while such *automobiles* are being used exclusively in the business of such person or organization and over a route such person or

organization is authorized to serve by federal or public authority, or

(4) ...

(c) ...

(d) With respect to (1) any *automobile* of the commercial type while leased or loaned to any person or organization, other than the *named insured*, engaged in the business of transporting property by *automobile* for others, or (2) any hired *private passenger automobile*, or (3) any *non-owned automobile*, the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance whether primary, excess, or contingent, available to the *insured*. Otherwise, the insurance under this endorsement is primary insurance.

Carolina contends that as a result of the Truckmen's Endorsement it did not provide primary insurance coverage but provided at most only excess insurance coverage for *any* claim arising out of the December 16, 1981, accident. We agree.

The Truckmen's Endorsement, in one form or another, is no stranger to the courts. *See, e.g., Transport Indemnity Co. v. Home Indemnity Co.,* 535 F.2d 232, 237 (3d Cir.1976); and *Carolina Cas. Ins. Co. v. The Insurance Company of North America,* 595 F.2d 128, 142 n. 48. (3d Cir. 1979).

In *Transport Indemnity, supra,* the court construed a truckmen's endorsement to a comprehensive auto liability policy carried by the lessor of a truck involved in an accident negligently caused by the employee of the lessee of the truck. The relevant language of the truckmen's endorsement was virtually identical to that of the truckmen's endorsement here in suit. The court concluded that the effect of the endorsement was to supercede apparent coverage extended to the lessee by the basic policy carried by the lessor and to render the coverage afforded by the lessor's policy only excess coverage.

Plaintiffs contend, however, that the Carolina truckmen's endorsement does not act to relegate the Carolina policy to excess coverage because in order for this to occur under clause (d) of the truckmen's endorsement there must be "other valid and collectible insurance available" to the *named insured,* Safrit. There is no other insurance available to Safrit relative to the December 16, 1981, accident, plaintiffs argue, because the only possible insurance available to Safrit is that provided by Protective policy X–424, but this is not available to Safrit because he is not a *named insured,* of course, and he is not covered under the omnibus clause because the only way he could be would be as an "affiliate," which he is not.

We agree with plaintiffs that Safrit may not be considered an affiliate under the ordinary meaning of that term.

In construing insurance contracts we must give words their plain and ordinary meaning unless they are ambiguous. *Union Paving Co. v. Thomas,* 186 F.2d 172, 176 (3d Cir.1951).

We find no ambiguity in the term "affiliate" as used in the Protective policy. *See* p. 1212, *supra.* Webster Third New International Dictionary (Unabridged) defines "affiliated" at p. 35 as follows: "1. an affiliated person: associate. 2a. a branch or unit of a larger organization.... b(1): a company effectively controlled by another or associated with others under common ownership or control (2): subsidiary."

The relationship between Safrit and Preston was that of lessor-lessee. Safrit was not in any sense a "branch or unit" of Preston, nor was Safrit a "subsidiary" of or "a company effectively controlled" by Preston or under "common ownership or control." Rather the relationship was an arms length contractual relationship, and this does not constitute an association or affiliation. *See, Re: Marine Sulphur Transport Corp.,* 312 F.Supp. 1081 (S.D.N.Y.1970).

Plaintiffs' contention, therefore, that the protective policies do not insure Safrit, the *named insured* on the Carolina policy, is valid. However, that is not the end of it. The truckmen's endorsement of the Carolina policy does not, as plaintiffs' argue, render the Carolina policy excess insurance

only where there is other valid and collectible insurance available to the *named insured.* Instead, the endorsement states that "with respect to (1) any *automobile* of the commercial type [the Safrit rig] while leased or loaned to any person or organization, [plaintiff Preston] other than the *named insured* [Safrit], engaged in the business of transporting property by *automobile* for others [Preston] ... the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance whether primary, excess, or contingent, available to the *insured.* [not, the *named insured*]. Otherwise, the insurance under this endorsement is primary insurance." (emphasis and matter in brackets added).

Thus, it is plain that the operating words in the endorsement are "available to the insured," which, of course, includes Preston as well as Safrit. *See* page 1211, *supra.* And while the insurance coverage afforded by the Protective policies was not available to Safrit, it certainly was to Preston. Since the endorsement provides that once the other available insurance condition was met the *insurance afforded under the endorsement as to any automobile of the commercial type* (the Safrit rig) while leased to an organization engaged in the business of transporting property by automobile for others (Preston) shall be excess insurance, it follows that the Carolina policy is excess insurance as to the *Safrit rig.* This, we believe, applies to any legal liability to *any* insured arising out of the *use of the Safrit rig.* Therefore, the defendant's insurance policy is excess in all matters arising out of the December 16, 1981, accident and is not available as a source to indemnify Preston/Protective.

There is another reason why the Carolina policy may not be looked to for indemnity by Safrit to Preston and/or Protective. The coverage afforded is to pay those sums which Safrit shall become *legally obligated* to pay as a result of an occurrence involving the Safrit rig. The parties agreed that all of the injuries and deaths arising out of the December 16, 1981, accident resulted from the sole negligence, of Safrit (Finding 8) who was operating the Safrit rig under a lease agreement between Safrit and Preston (Finding 3).

The lease agreement provides in ¶ 16 as follows:

> Nothing contained in this Agreement will be construed so as to limit LESSOR'S liability for any grossly negligent, reckless, willful, intentional, criminal or other act of similar nature performed by LESSOR. If any party not a party hereto makes a claim or demand against LESSEE, or enters any sort of proceeding against LESSEE on account of any such act as described in this paragraph, LESSOR will indemnity and hold harmless LESSEE from any liability, loss, costs, expenses (including attorneys' fees) judgments or awards resulting from or arising out of said acts. The commission of any act described in this paragraph by LESSOR will automatically terminate this Agreement without any further act or notice on LESSEE'S part. The indemnity and hold harmless provisions of this paragraph will survive termination of this Agreement.

Applying the principle of construction of *ejusdem generis* to the above, *see, Travelers Indemnity Co. v. United States,* 543 F.2d 71 (9th Cir.1976), we exclude indemnity for ordinary negligence, since the type of conduct of the lessor which the parties agreed would give rise to a right of indemnity in the lessee covers the spectrum from gross negligence to criminal conduct, all of which is clearly of a qualitative and/or quantitative nature much different and more serious than ordinary negligence.

In addition to the above, the lease agreement at ¶ 11 provided:

> LESSOR shall carry bobtail public liability insurance, as to each of the motor vehicle(s) covered by this Agreement and Addendum hereto, in the minimum amount of One Hundred Thousand Dollars ($100,000.00) for injury to one person and in the minimum amount of Three Hundred Thousand Dollars ($300,000.00) for injury to more than one person arising out of any one accident and property damage insurance in the minimum

amount of Fifty Thousand Dollars ($50,-000.00) covering injury or damage to the property of others....

We believe, and so hold, that under ¶ 16 of the lease the parties agreed to limit Safrit's liability to indemnify Preston to those situations where damages to third parties are caused by Safrit through his conduct which is "grossly negligent, reckless, willful, intentional, criminal or ... [of a] similar nature...."

There is no contention by plaintiffs that Safrit's conduct on December 16, 1981, was anything other than ordinary negligence.

Paragraph 11 bolsters this construction of the lease since by that paragraph Safrit is only required to carry "bobtail public liability insurance."

Bobtail insurance was described in *Ayers v. Kidney,* 333 F.2d 812 (6th Cir.1964) at p. 813 as follows:

The policy in question ... provided what is known as "deadhead" or "bobtail" coverage. It was designed to cover truckers who lease their trucks, usually with a driver, to authorized public carriers while the trucks are returning empty —"deadheading"—after delivering cargo for the lessee public carrier. The liability of such a trucker while carrying cargo for the lessee carrier is covered by the carrier's liability insurance.

The provision that Safrit would be indemnified for gross negligence, criminal conduct etc.—juxtaposed with the provision that Safrit only carry "bobtail" insurance, lead us to conclude that Preston contracted away its common law right to be indemnified for damages which it must bear under principles of *respondeat superior* arising out of Safrit's ordinary negligence. This, of course, the parties had the right to do. *See Carolina Casualty Insurance Company v. The Insurance Company of North America,* 595 F.2d 128 (3d Cir.1979), *citing Allstate Insurance Co. v. Liberty Mutual Insurance Co.,* 368 F.2d 121 (3d Cir.1966) and n.32 at page 138.

Protective's rights to subrogation for indemnity from Safrit obviously can rise no higher than Preston's. *See Grasberger v. Liebert,* 335 Pa. 491, 6 A.2d 925, 926 (1939).

This is especially so, since the Protective policies insure liability arising out of contract. *See,* p. 1211, *supra.* The effect of ¶ 16 of the lease is an assumption by Preston of full responsibility vis-a-vis Safrit, the lessor, for damages arising out of Safrit's ordinary negligence while on the business of Preston. In any event, the Carolina policy only agrees to pay those sums which Safrit becomes legally obligated to pay as a result of an occurrence arising out of the use of the Safrit rig. And while Carolina's liability cannot be *increased* by the terms of a contract to which it has not agreed to be bound, *Transport Indemnity,* 535 F.2d at 235, there is no reason why its liability exposure cannot be *decreased* by such a contract with a third party which modifies and diminishes rights which the third party otherwise would have under common-law principles and which thereby modify and diminish the sums which the insured is "legally obligated to pay." *See, Carolina Casualty, supra.*

The Protective policies described in finding 9, *supra,* had identical insuring agreements which provided in their pertinent parts as follows:

The Company [Protective] hereby agrees ... to indemnify the Insured with respect to occurrences ... for any sums [within the policy limits] which the Insured shall by law *or contract* become liable to pay, and shall pay or by final judgment be adjudged to pay to any person as damages:

(A) for Personal Injury, including death at any time resulting therefrom;

.    .    .    .    .

The indemnities are with respect to occurrences arising out of the ownership or maintenance and conduct of the Insured's business as a Public Carrier of merchandise. (Matter in brackets and emphasis added).

The policies differed materially only in that Policy X–424 provided a limit of liability of $225,000. with the insured's retention (deductible) being $25,000.; had as its named insured Frontier Trucking Division but also insured Frontier Trucking Division Preston

Trucking Co., Inc. and, *inter alia,* "all affiliates, and shall also include officers, directors and salaried personnel of said company and affiliates, while acting within the scope of their duties...." whereas, Policy X–420 had as its named insured Preston Trucking Co./Preston Trucking Co., Inc. and provided a limit of liability of $9,750,-000. with the insured's retention (deductible) being $250,000. Endorsement # 15 to X–420 provided that Policy X–424 would be considered the insured's retention (deductible) under X–420. This policy also insured, *inter alia,* all "subsidiaries" of the named insured, but made no mention of affiliates.

The accident of December 16, 1981, was, of course, an occurrence "arising our of the ownership or maintenance and conduct of the Insured's [Preston's] business as a Public Carrier of merchandise."

Based on all of the foregoing, therefore, the court concludes as follows:

(a) that the policy of insurance issued by Carolina to one Franklin E. Safrit afforded only excess insurance coverage for that accident;

(b) that the indemnity contracts between Protective and Preston provided primary insurance coverage for that accident; and,

(c) that Carolina is not liable to reimburse Preston or Protective for any sums paid by or on behalf of Preston in satisfaction of all claims arising out of the accident or for any costs or legal fees incurred in the investigation, negotiation and settlement of the claims.

An appropriate order will be entered.

### ORDER OF COURT

AND NOW, this 26th day of January, 1989, for the reasons stated in the opinion filed this day, IT IS ADJUDGED AND DECREED that the policy of insurance, No. GLA 02 25 17, issued by defendant Carolina Casualty Insurance Company to one Franklin E. Safrit afforded only excess insurance coverage for an accident which occurred in Tioga County, Pennsylvania, on December 16, 1981; and,

IT IS FURTHER ADJUDGED AND DECREED that the insurance contracts issued by the plaintiff, Protective Insurance Company, to Preston Trucking Company, Inc., Nos. X–420 and X–424, provided primary insurance coverage for the aforesaid accident.